Joe E. MADDEN *v.* U.S. ASSOCIATES, et al.

CA 91-488                                    844 S.W.2d 374

Court of Appeals of Arkansas
Division I
Opinion delivered December 16, 1992

*Winston Bryant*, Att'y Gen., by: *Jeanette L. Hamilton*, Asst. Att'y Gen., and the Arkansas Securities Dept., by: *Bruce H. Bokony* and *David H. Smith*, for appellant.

*Randell E. Loftin, Ronald Floyd Davis*, and *Gary Ellis Johnson*, pro se, for appellees.

JUDITH ROGERS, Judge. In its regulatory capacity, the appellant, the Arkansas Securities Department (hereinafter "Department"), revoked the registration of U.S. Associates, Inc.,

and the licenses of appellees Rondell Eugene Loftin, Ronald Floyd Davis and Gary Ellis Johnson. The circuit court, upon review, reversed the Department's decision based on the determination that appellees had not been afforded a fair hearing before the agency's tribunal as evidenced by an *ex parte* discussion that took place between the agency's hearing officer and department representatives. On appeal, the department contends that the trial court erred in holding that appellees had been denied due process and further argues that its decision was otherwise supported by substantial evidence. We affirm.

On March 13, 1989, the Department's staff filed an administrative complaint against the appellees and others alleging certain violations of Arkansas securities laws and regulations. In general, it was alleged that appellees Ellis and Johnson, as agents of U.S. Associates, had engaged in various unlawful trading practices and that appellee Loftin, the president and chief executive officer of U.S. Associates, had failed to discharge his supervisory duties and obligations with respect to these and the other named agents of the firm. On November 21, 1989, as provided under Ark. Code Ann. § 23-42-202(b) (1987), the Commissioner, Beverly Basset, delegated to Joe E. Madden, Jr., an Assistant Commissioner, the authority to act as the hearing officer in this matter.[1] Pursuant to Ark. Code Ann. 25-15-213(2)(C) (Repl. 1992), the appellees, as well as another named respondent, Adron Jerome Gilbert, filed affidavits of personal bias and disqualification in which they requested the removal of Madden as the hearing officer. Madden denied the appellees' motions for disqualification, but granted the motion of Gilbert, based on his personal involvement in the investigation of Gilbert and the attempted negotiation of a settlement with him.

The hearing began on December 5, 1989, and continued for a period of thirty-nine days. At the conclusion of the twenty-fourth day, the appellees renewed their requests for Madden's disqualification. In their oral motions, appellees contended that

---

[1] Appellant, Joe E. Madden, Jr., the current Commissioner of the Arkansas Securities Department, succeeded Commissioner Beverly Bassett in January of 1991. Throughout the period of time that this matter was before the Department, Bassett held the position of Commissioner.

Madden had also taken part in the investigation which led to the complaint being filed against them. Their argument was based on Gilbert's testimony that morning suggesting that the appellees had been a topic of discussion in a June 29, 1989, meeting conducted by Madden with Gilbert and other staff members, including Deputy Commissioner Becky Berry. At the outset of the proceedings the next day, Madden denied the Department's motion to quash the subpoena requested by appellees for Ms. Berry, and appellee Loftin proceeded to question Ms. Berry as to her recollection of the June 29, 1989, meeting. During Loftin's examination, the witness was confronted with a tape recording of a conversation which had occurred during the noon recess the previous day between the hearing officer, Ms. Berry, and attorneys and representatives for the Department, Drake Mann, John Moore and David Smith. A transcript of the *ex parte* discussion was introduced into the record, which states as follows:

> Ms. Berry: Gary Johnson . . . he is, I mean really, yesterday, for a couple of days he just sits there nonchalant and then he just gets . . .
>
> Mr. Mann: All wound up.
>
> Ms. Berry: Yeah, if he was a female I could understand it.
>
> Mr. Moore: Who says he isn't.
>
> Mr. Mann: Cross-examination . . .
>
> Ms. Berry: Well he says that Glen Reese made all the recommendations and that he didn't. He also says . . . I can remember he said it again in the meeting. All I remember is that we discussed League and all. He said what did y'all discuss . . . all of it . . . we discussed League and all the other allegations in the complaint . . . That's a lie.
>
> Mr. Moore: Well we're going to have to attach [sic] his credibility and show he is biased. That's what we're going to have to do.
>
> Ms. Berry: I do not . . . as God is my witness I do not remember.
>
> Hearing Officer: If you don't remember, you don't

remember.

Ms. Berry: I don't, I don't . . . refreshing memory . . . do you believe that?

Mr. Moore: What are we going to do for lunch here?

Ms. Berry: Very Quick.

Mr. Mann: What time is it?

Mr. Moore: I've got to get someone to handle the meeting over there.

Hearing Officer: We're breaking for lunch.

Mr. Smith: If you want to John, you can run over and do that.

Hearing Officer: We're breaking til one.

Mr. Smith: 'cause we're going to have that meeting. We can go through our notes.

Hearing Officer: There's not that much cross-examination.

Ms. Berry: Then why even open it up for them any.

Hearing Officer: Now you've told them that your [sic] going to.

Ms. Berry: You could go down and tell them.

Mr. Moore: Screw them. I don't care if we've told them anything at all . . . We've changed our minds . . . screw them . . . I don't care.

Mr. Mann: Your [sic] prejudice is becoming self-evident.

Ms. Berry: That's right.

Mr. Moore: I am. I will not hide it. In fact more so today than I think I have ever been.

Ms. Berry: . . . Is Gary Johnson . . . has he not won the contest:

Mr. Moore: Asshole of the year.

Ms. Berry: No that's just to . . .

Mr. Smith: . . . say's anything right.

Mr. Mann: He succeeding in pissing y'all off.

Hearing Officer: . . . That's the only thing he's trying to do.

Mr. Moore: I'm assuming that you're going to overrule any objections we make . . . regarding that stuff.

Hearing Officer: No, not if I think it's a good solid valid objection.

Mr. Moore: Like we haven't been objecting to the hearsay nature of all this 'cause I figure you're gonna allow it anyway.

Hearing Officer: I'm gonna let him tell about what happened and his recollection of it.

Mr. Moore: Of course the only thing he says . . .

Hearing Officer: I think the record is perfectly clear that he says . . . I think that I remember . . . I think . . .

Mr. Moore: Yeah.

Ms. Berry: So we cover everything.

Mr. Moore: The only thing that I think hurts about that meeting is he says Johnson and Davis were mentioned.

Ms. Berry: Right.

Mr. Moore. He never has, really said that Ron Loftin was mentioned.

Mr. Mann: And that hurts because of Joe's bias.

Hearing Officer: Yeah.

Mr. Mann: So we can drop this out of the complaint . . . if we want to . . . if we think it's that bad . . . Right?

Hearing Officer: No. Because it's Johnson and Davis.

Mr. Mann: Oh, it's Johnson and Davis . . . Right . . . O.k., never mind.

Hearing Officer: . . . I don't remember it either.

Ms. Berry: Listen . . . it was not.

Hearing Officer: There was . . . When he started talking about it . . . The only thing I remember . . . is there was a discussion about that FNMA IO day.

Ms. Berry: Right.

Hearing Officer: That everybody took their commissions.

Ms. Berry: But that wasn't either one of those guys. That was Tim Gibbons.

Hearing Officer: But see, I couldn't remember who that was.

Ms. Berry: And you weren't involved in that at all.

Hearing Officer: See I couldn't remember. But see, at that point I didn't know who any one of those people were.

Ms. Berry: You didn't know what we were talking about . . . That had nothing to do with either one of those people.

Mr. Moore: Well they'll ask you about it.

Ms. Berry: Well am I going to get up there.

Hearing Officer: I think you should get prepared.

Ms. Berry: Fine . . . I'd love to.

Mr. Moore: See y'all after lunch.

Hearing Officer: I'm going back to the office, I've got a ton of calls to make including calling Gerald Hannahs.

In explaining the substance of the conversation, Ms. Berry acknowledged that the testimony discussed was that of Mr. Gilbert, who had testified on behalf of the appellees before the lunch break. After further questioning, appellees alleged that the witness's testimony was inconsistent in certain material respects and the hearing officer granted a brief continuance from that day, a Wednesday, until the following Monday, so that her testimony could be transcribed. When the hearing was resumed on Monday, the hearing officer stated for the record that he had been informed by the court reporter that a transcript of Ms. Berry's testimony could not be completed on such short notice. The hearing officer

then reversed his earlier decision and granted the Department's motion to quash the subpoena for Ms. Berry. Consequently, no further examination of this witness was allowed. Appellees again renewed their request for disqualification of the hearing officer; the request was denied.

On September 26, 1990, the hearing officer filed a lengthy opinion consisting of his findings of fact, conclusions of law, and his recommendation that the appellee's licenses be revoked. On that day, the Commissioner approved and adopted the hearing officer's decision in its entirety. Appellees pursued an appeal in the circuit court seeking to set aside the agency's order pursuant to Ark. Code Ann. § 25-15-212 (Repl. 1992). The circuit judge determined that the hearing officer had abused his discretion by taking part in the *ex parte* discussion and concluded that the appellees had been deprived of the constitutional right to a fair hearing. In its order, the court stated that "it in no way questions the integrity of the hearing officer, Joe Madden, but that litigants, such as the plaintiffs, are not only entitled to a fair hearing but also to a hearing that has the 'appearance' of a fair hearing and that in this case simply was not done." The court reversed the Department's decision and remanded for a new hearing. In so doing, the court did not address the question of whether the agency's decision was supported by substantial evidence.

A fair trial by a fair tribunal is a basic requirement of due process. This rule applies to administrative agencies as well as to courts. *See Sexton* v. *Ark. Supreme Court Comm. on Professional Conduct*, 299 Ark. 439, 774 S.W.2d 114 (1989) (*citing In re Murchison*, 349 U.S. 133 (1955). *See also Ark. Elec. Energy Consumers* v. *Ark. Pub. Serv. Comm'n*, 35 Ark. App. 47, 813 S.W.2d 263 (1991). The supreme court has held that administrative agency adjudications are also subject to the "appearance of bias" standard which is applicable to judges. *Acme Brick Co.* v. *Missouri Pacific R.R.*, 307 Ark. 363, 821 S.W.2d 7 (1991). As observed by the court in *Ark. Racing Comm'n* v. *Emprise Corp.*, 254 Ark. 975, 981, 497 S.W.2d 34, 38 (1973), "Since the underlying philosophy of the Administrative Procedure Act is that fact finding bodies should not only be fair but appear to be fair, it follows that an officer or board member is disqualified at any time 'there may be reasonable suspicion of unfairness.' " The Administrative Procedure Act includes a provision which states

that members of an agency assigned to render a decision or to make final or proposed findings of fact or conclusions of law in any case of adjudication shall not communicate, directly or indirectly, in connection with any issue of fact with any person or party nor, in connection with any issue of law, with any party or his representative, except upon notice and opportunity for all parties to participate. Ark. Code Ann. § 25-15-209(a) (Repl. 1992). The act further provides that all presiding officers and all officers participating in decisions shall conduct themselves in an impartial manner and may at any time withdraw if they deem themselves disqualified. Ark. Code Ann. § 25-15-213(2)(B) (Repl. 1992).

■ Based on the existence and content of the *ex parte* communication, particularly when viewed in conjunction with the hearing officer's actions after the discussion was bought to light, we cannot disagree with the circuit judge's conclusion that the appearance of a fair hearing was compromised. Accordingly, we affirm the circuit judge's decision. Because this matter is remanded for a new hearing, it is unnecessary for us to consider appellant's argument whether the Department's decision was supported by substantial evidence.

Affirmed.

CRACRAFT, C.J., and MAYFIELD, J., agree.