ARKANSAS APPRAISER LICENSING AND CERTIFICATION BOARD *v.* W.F. FLETCHER

96-660                                                933 S.W.2d 789

Supreme Court of Arkansas
Opinion delivered November 18, 1996

*Winston Bryant*, Att'y Gen., by: *Virginia H. Castleberry*, Asst. Att'y Gen., for appellant.

*Mike Bearden Law Firm*, by: *Mike Bearden*, for appellee.

DONALD L. CORBIN, Justice. Appellant, Arkansas Appraiser Licensing and Certification Board, appeals the order of the Mississippi County Circuit Court reversing the Board's decision to suspend the license of Appellee, W.F. Fletcher. The circuit court's decision was based on an alleged *ex parte* communication between two Board members. Resolution of this appeal requires an interpretation of Ark. Code Ann. § 25-15-209 (Repl. 1996); our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(17)(vi) (as amended by per curiam order July 15, 1996). We find merit to the first of the Board's three arguments and therefore reverse.

Appellee is a licensed real-estate appraiser who prepared an appraisal report of certain duplex apartments located in Osceola, Arkansas, for Tommy Neal to use in obtaining a loan on the subject real estate. The Board held an administrative hearing and then entered an order in which it found that Appellee's appraisal report failed to comply with Uniform Standards of Professional Appraisal Practice 1-4(b) and 2-1(a). The Board concluded that such failure to comply with those standards resulted in violations of Ark. Code Ann. § 17-14-206(1), (4) (Repl. 1995), Ark. Code Ann. § 17-14-305(a) (Repl. 1995), and Board Regulation I(O). The Board fined Appellee $250.00 and suspended his license for nine months to be followed by a probationary period of six months. The Board also required Appellee to complete a course in the Uniform Standards of Professional Appraisal Practice (USPAP) before the end of his probationary period.

Appellee sought judicial review of the Board's decision in circuit court pursuant to Ark. Code Ann. § 25-15-212 (Repl.

1996) and Ark. Code Ann. § 17-14-205 (Repl. 1995). The circuit court conducted a hearing and entered an order reversing the Board's decision because there had been an *ex parte* communication between Board members in violation of section 25-15-209 that created an appearance of impropriety, if not actual impropriety, and because the Board's decision was not supported by substantial evidence, but was arbitrary, capricious, and an abuse of discretion. This appeal followed.

The Board's first point on appeal is a challenge to the trial court's finding that section 25-15-209(a) was violated. The Board contends there was no evidence of an *ex parte* communication in the record and, therefore, the trial court had no evidence from which to conclude that section 25-15-209(a) had been violated. We agree that the record is void of any evidence that section 25-15-209 was violated.

Section 25-15-209 provides that members or employees of an agency assigned to render a decision or to make proposed findings of fact or conclusions of law in any adjudication shall not communicate with any person or party in connection with any issue of fact, or with any party or his representative in connection with any issue of law. There is absolutely no evidence in this record whatsoever to support the trial court's finding that section 25-15-209 was violated. For the sake of clarity in understanding our decision, we recite the circuit court's findings in their entirety:

> 1. This Court has jurisdiction over the parties and the subject matter, and this appeal is properly before the Court.

> 2. The complaint made against the Petitioner [Appellee] was originated by another appraiser from Blytheville, Arkansas, who was not a party to the appraisal in question, to Mike Pyron, a member of the Board. That based on the complaint made to Mike Pyron, an investigation was initiated by the Board on its own motion, and another Board member, namely, Larry Clark, was chosen to review the appraisal in question and act as a witness at the Board hearing. That Respondent [Appellant] has admitted in its Brief that Mr. Pyron and Mr. Clark, at the time of the investigation and hearing, had a business relationship, although Mr. Pyron worked in Little Rock, and Mr. Clark worked in Jonesboro.

3. The Court finds that the communications between the Board members mentioned above is a violation of the Administrative Procedure Act and constitutes ex parte communications, in violation of ACA § 25-15-209.

4. The ex parte communications between the Board members named hereinabove tainted the entire proceeding against the Petitioner [Appellee], and there is an appearance of impropriety, if not actual impropriety, as a result of said ex parte communications.

5. The actions of the Board members as set forth hereinabove constitutes an abuse of discretion, and the decision made by the Board was not supported by substantial evidence of record, and was arbitrary and capricious.

6. The decision by the Arkansas Appraiser Licensing and Certification Board, which was entered on July 21, 1994, should be reversed, and the Complaint filed against the Petitioner [Appellee] should be dismissed with prejudice, in that the substantial rights of Petitioner [Appellee] were prejudiced because the administrative findings, inferences, conclusions, and decisions are not supported by substantial evidence of record, and, further, are arbitrary, capricious, and characterized by an abuse of discretion.

7. The Petitioner [Appellee] should be awarded his costs in filing this action.

IT IS SO ORDERED.

Based on the trial court's order, it is clear that the trial court thought a business relationship between two Board members amounted to an *ex parte* communication prohibited by section 25-15-209. There is nothing in that statute that prohibits business relationships between agency members. To the contrary, it prohibits *communications* about issues of fact or law relating to a particular adjudication proceeding. Moreover, section 25-15-209(b) specifically provides that agency members may communicate with each other. Thus, while there is evidence that a business relationship did indeed exist between Board members Pyron and Clark, there is no evidence whatsoever that the two members ever discussed issues of fact or law in Appellee's case with other persons as is required by section 25-15-209.

Our review of the record indicates that Board member Larry Clark testified at the hearing before the Board. He stated that the Board asked him to review the appraisal report at issue to see if it complied with industry standards, and he concluded that it did not comply with industry standards in numerous respects. When asked if he knew how the report came to the Board's attention, he stated that he did not have direct knowledge, but he understood it was called to the attention of Board member Mike Pyron by another appraiser in Northeast Arkansas, Ron Cardwell. Board member Mike Pyron did not testify at the Board's hearing, although he was present in his capacity as a Board member. Appellee testified at the Board's hearing, but did not offer anything on the subject of the business relationship or *ex parte* communications between Pyron and Clark.

Our review of the record indicates further that, at the hearing in circuit court, Appellee was allowed to present additional evidence on the alleged *ex parte* communication. This additional evidence consisted of testimony from Appellee and Jim Martin, Executive Director of the Board. Appellee testified that subsequent to the hearing before the Board, he asked Ron Cardwell why he had complained to the Board, and that Cardwell responded that if Appellee had not done the appraisal in question, Cardwell would have been able to do it, and it therefore cost Cardwell money for Appellee to be in the appraisal business. Appellee did not, however, offer any further testimony as to any *ex parte* communications between Pryon and Clark. Executive Director Martin testified that Clark and Pyron had a business relationship at one time in the Jonesboro area, but that he had no knowledge of any discussions between Board members without Appellee being present. Martin testified that Cardwell's name did not come to his attention until the hearing before the Board. Martin testified further that this action began when the Board filed its own complaint against Appellee and sent him notice of the complaint and upcoming hearing. Martin stated that the Board's complaint was the result of both Pyron's letter to him asking for an investigation of the appraisal report and his own investigation that revealed that the comparable sales listed in the appraisal did not exist. Finally, Martin testified that Clark participated in the Board's hearing as a witness, but did not take part in the decision-making process.

On appeal, appellee relies heavily on Clark's testimony at the

Board's hearing that, although he did not have direct knowledge of who the appraiser was that called this to the Board's attention, he understood it to be Cardwell. Appellee argues that from this testimony one can infer Pyron and Clark communicated about his case. Appellee relies further on the fact that Cardwell's identity was not made known to Appellee until the Board's hearing. He uses this fact to promote the inference that Pyron knew Cardwell's motivation and adopted that motivation in pursuing the investigation.

■ Appellee's argument is mistaken in two respects. First, Arkansas case law clearly contemplates that violations of section 25-15-209(a) be established by proof of the existence and content of the alleged *ex parte* communication. *Arkansas Alcoholic Beverage Control Div. v. Cox*, 306 Ark. 82, 811 S.W.2d 305 (1991); *Madden v. U.S. Associates*, 40 Ark. App. 143, 844 S.W.2d 374 (1992). In both of the cited cases, there was evidence of the existence and content of *ex parte* communications. In *Cox*, there was testimony by the agency members themselves as to the existence and content of the *ex parte* communications. *See Cox*, 306 Ark. at 84, 811 S.W.2d at 306-07. In *Madden*, a transcript of the tape-recorded *ex parte* discussion was introduced into the record. *See Madden*, 40 Ark. App. at 145-48, 844 S.W.2d at 375-77. Here, there is no evidence of the existence and content of any *ex parte* communication, and Appellee essentially acknowledges as much when he argues that the existence and content of the alleged *ex parte* communication can be *inferred* from the testimony in this case. Second, even assuming without deciding that inferences of communications rather than evidence of their existence and content are sufficient to establish violations of section 25-15-209(a), this record is not sufficient to establish the two inferences Appellee suggests. Section 25-15-209(b) expressly allows communications between agency members. Thus, even assuming the first inference Appellee asks us to draw is true, that Clark and Pyron communicated about Cardwell's oral complaint to Pyron, such a communication is not prohibited by section 25-15-209(a) because it is a communication between agency members. As regards the second inference Appellee asks us to draw, that Pyron adopted the alleged "eliminate-the-competition" motivation of Cardwell, Pyron's letter to Martin expressly negates such an inference. Pyron stated in his letter to the Board that:

> As a member of our Licensing Board and in the interest of protection of the public and our assurance to the financial

community that licensees recognized by our Board are of the highest integrity possible and operate in a totally ethical manner. I feel the concerns expressed warrant further investigation.

■ In summary, we conclude that based on this record the trial court's finding that a business relationship between Clark and Pyron violated section 25-15-209(a) was clearly erroneous. There is simply no evidence of the existence or content of an *ex parte* communication from which the trial court could have found a violation of section 25-15-209(a). Moreover, communications between agency members are not prohibited pursuant to section 25-15-209(b).

Because we have concluded that no *ex parte* communication occurred in this case, and consequently that no violation of section 25-15-209(a) occurred, we need not address the Board's second point for reversal concerning whether a violation of section 25-15-209(a) alone requires reversal or whether Appellee is required to demonstrate prejudice.

The Board's third point for reversal is a request to reinstate its decision because it was supported by substantial evidence. Appellee does not address this argument in his brief; rather, he claims it is unnecessary to do so because there is sufficient evidence of the alleged *ex parte* communication.

■ The Board's order states that Appellee's appraisal report fails to comply with USPAP 1-4(b) and 2-1(a) and that such failure to comply constitutes a violation of section 17-14-206(1), (4), section 17-14-305(a), and Board Regulation I(O). We review agency decisions to determine if there is substantial evidence to support them. *Arkansas Appraiser Licensing and Certification Bd. v. Biles*, 320 Ark. 110, 895 S.W.2d 901 (1995). We conclude there is substantial evidence to support the Board's decision that Appellee's appraisal report violated section 17-14-206.

■ We cannot address the issue of whether the USPAP and section 17-14-305, which refers to the USPAP, were violated because of a deficiency in the abstract. The abstract does not contain a summary of USPAP 1-4(b) and 2-1(a), although the abstract does contain a summary of Regulation I(O), which provides that the Board adopts by reference the USPAP. Although the argument portion of the Board's brief contains the missing Standards, the

record cannot be contradicted or supplemented by statements made in the brief. *Bice* v. *Hartford Accident & Indem. Co.*, 300 Ark. 122, 777 S.W.2d 213 (1989).

■ Courts can take judicial notice of state agency regulations that are duly published. *Grable* v. *State*, 298 Ark. 489, 769 S.W.2d 9 (1989) (citing *Seubold* v. *Fort Smith Special Sch. Dist.*, 218 Ark. 560, 237 S.W.2d 884 (1951)). The Board's regulations are duly published, and as already mentioned, provide in Section I(O) that "the 'Uniform Standards of Professional Appraisal Practice' (USPAP) as published and amended by the Appraisal Foundation from time to time" are adopted by reference. However, the Board's regulations as published do not contain the USPAP. Because the Appraisal Foundation is not a state agency, we cannot take judicial notice of those Standards. Thus, our appellate review is impeded by the abstract's failure to include a summary of USPAP 1-4(b) and 2-1(a). Furthermore, because section 17-14-305 refers to USPAP, we can only review that part of the Board's order finding that section 17-14-206 was violated.

■ Section 17-14-206(4) provides that the Board may, upon its own motion and after notice and hearing, suspend or revoke a license and impose a fine for "[a]ny actions demonstrating untrustworthiness, incompetence, dishonesty, gross negligence, material misrepresentation, fraud, or unethical conduct in any dealings subject to this chapter or these regulations[.]" The following testimonies from Board member Clark and Appellee at the Board's hearing provide substantial evidence to support the Board's finding that section 17-14-206 was violated.

At the hearing before the Board, Board member Clark testified that he found numerous problems with the subject appraisal: the appraisal did not reveal how the land value was determined; the comparable units had square footages that were smaller than the appraised property and that there was no statement in the report as to how Appellee arrived at the square footages; there was no statement as to how the estimated rent for the appraised unit was determined; there were post improvements that were not reviewed; the ownership history of the appraised property was not included; the purpose of the report was not included; there was no analysis of why a higher Gross Rent Multiplier was used on the appraised unit than was used on the comparable units; the client's objective and function of the report was not included; and the report needed

additional addendums explaining the aforementioned problems. Clark stated that one of the most serious violations was that the report listed comparable sales that were not in fact sales at all.

At the hearing before the Board, Appellant stipulated that the three comparable sales listed in the appraisal report were not sales at all. Appellee testified and admitted that, based on the standards adopted in Arkansas, he should not have done this appraisal the way he did. In his defense, Appellee stated that his report was not misleading because he verbally disclosed the fictitious sales to his client and his client's lender.

■ Clark's testimony and Appellee's testimony reveal that Appellee's actions demonstrated untrustworthiness, dishonesty, material misrepresentation, and unethical conduct when preparing his appraisal report. Accordingly, we conclude there is substantial evidence to support the Board's decision that section 17-14-206 was violated, and we reinstate the Board's decision fining Appellee and suspending his appraiser's license, as those penalties are authorized in section 17-14-206.

The order of the circuit court is reversed, and the order of the Board is reinstated.