The Honorable Larry Prater State Representative 8800 Prater Lane Rudy, AR 72952-9373
Dear Representative Prater:
This is in response to your request for my opinion on the following question:
 May the Building Inspector of Ozark do maintenance work for the city on his own time?
You note in your request that the inspector is licensed to perform electrical and HVAC work and that "[a]dditionally, he does maintenance work (on his own time) after hours for the public."
RESPONSE
To answer this question, I would need to conduct a factual inquiry this office is neither equipped nor authorized to undertake. However, I can and will set forth the legal principles that will apply in determining whether the building inspector faces a conflict of interests.
In the attached Ark. Op. Att'y Gen. No. 91-302, my predecessor offered the following conclusion regarding the status of a municipal building inspector:
 It is my opinion that a City Building Inspector would likely be deemed a municipal "officer" by a court faced with the question. His duties and compensation are usually set by city ordinance, and he is ordinarily appointed by the governing body. See generally A.C.A. § 14-56-202 (which refers to building inspectors as "officer[s]").
The issue, then, is whether a municipal officer is barred by any legal or ethical proscription from undertaking the maintenance work referenced in your request.[1] In Ark. Op. Att'y Gen. No. 95-099, this office set forth the standard for determining whether a municipal officer faces a conflict of interests:
 With regard, generally, to the existence of a conflict, it has been stated that the phrase "conflict of interest," when used to suggest disqualification of a public official from performing his or her duties, ordinarily refers to "a clash between the public interest and the private pecuniary interest of the individual concerned." Gardner v. Nashville Housing Auth., 514 F.2d 38 (6th Cir. 1975). The "conflict of interest theory" is based "on the fact that an individual occupying a public position uses the trust imposed in him and the position he occupies to further his own personal gain. It is the influence he exerts in his official position to gain personally in spite of his official trust which is the evil the law seeks to eradicate." City of Coral Gables v. Weksler, 164 So.2d 260, 263 (Fla.App. 1964). See also generally 63A Am. Jur. 2d Public Officers and Employees § 321 (1984).
 The furtherance of the officer's personal interest is thus the focal point of the unlawful conflict of interest theory. See Van Hovenberg v. Holman, 201 Ark. 370, 144 S.W.2d 719 (1940).
In Ark. Op. Att'y Gen. No. 2000-072, I elaborated as follows:
 The common law prohibition against conflicts of interest is reflected in the following description of the public policy underlying the principle:
 A public office is a public trust . . . and the holder thereof may not use it directly or indirectly for personal profit, or to further his own interest, since it is the policy of law to keep an official so far from temptation as to insure his unselfish devotion to the public interest. Officers are not permitted to place themselves in a position in which personal interest may come into conflict with the duty which they owe to the public, and where a conflict of interest arises, the office holder is disqualified to act in the particular matter and must withdraw.
 67 C.J.S. Officers § 204. See also Ops. Att'y Gen. 99-349; 98-275; 94-283; and 94-446, citing Hovenberg v. Holman, 201 Ark. 370, 144 S.W.2d 719 (1940); Madden v. United States Associates, 40 Ark. App. 143, 844 S.W.2d 374 (1992); Acme Brick Co. v. Missouri Pacific R.R., 307 Ark. 363, 821 S.W.2d 7
(1991); and 63A Am. Jur. 2d Public Officers and Employees § 321.
 The above-quoted policy statement concerning conflicts of interest makes clear that in situations where a common law conflict of interest is present, it may be appropriate for the affected public servant to abstain from participating in any decision-making procedure that would impact upon his or her personal interests, so as to avoid the temptation of placing his self-interest above the interest of those he was elected to represent. This policy statement appears to indicate that the wrong to be avoided is the placing of self-interest above public duty. Whether a wrong of this nature has occurred is entirely a question of fact and can only be established by the presentation of factual evidence showing both the motivation and the effect of the public servant's act.
Applying the above principles to the particular facts of this case should be relatively straightforward. If the inspector is not paid for his maintenance work, I believe he would not face any conflict of interests. However, I gather from your request that he is paid. If so, determining whether he faces a conflict of interests will entail conducting a factual inquiry. It is not clear whether the building inspector is charged either with the duty to determine what public work needs to be done or with the power to select who will perform work on public projects.[2] If either of these questions is answered in the affirmative, I believe the building inspector would face a conflict of interests, since his performance of his official duties would then have immediate pecuniary implications for him in his capacity as potential maintenance man.
Simply put, without some express statutory authorization, a municipal officer should not hire himself to perform work for the public. See Ark. Op. Att'y Gen. No. 99-116 (opining that a builder/alderman should recuse "where the issue or decision apparently focuses more narrowly upon the councilman's personal economic interest"). My conclusion regarding such work might be different if the city council, as opposed to the building inspector, determined what work needed to be done and selected the building inspector to do it. However, I have not been informed how the projects are selected and who determines who the contractor will be.
Finally, answering your question may turn on the application of local ordinances setting forth ethical standards for municipal officers. I do not have access to such ordinances, if any exist, and can consequently only advise that you refer the issue to the city attorney.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] Although you mention in your request that the inspector is licensed to perform electrical and HVAC work, you further note that he "additionally" performs maintenance work. I assume from this phrasing that the maintenance work at issue is not the HVACR maintenance referenced at A.C.A. § 17-33-101(10). In any event, the permissibility of any work for the public will be judged under the standard discussed in the text.
[2] Section 17-34-104(b)(1) of the Code provides:
 It shall be unlawful for the building inspector or other authority to issue or allow the issuance of a building permit unless and until the applicant has furnished evidence that he is either exempt from the provisions of this chapter or is registered under this chapter to carry out or superintend the work to which the permit relates.
I assume, but cannot firmly establish with conducting an impermissible factual inquiry, that the building inspector issues building permits in Ozark. I do not know whether the inspector issued permits to himself in this case or, for that matter, whether the work at issue even required a permit. These are questions to be addressed by a finder of fact.