Mr. Eddy Easley, Prosecuting Attorney Seventh Judicial District 215 East Highland, Suite 4 Malvern, AR 72104
Dear Mr. Easley:
You have requested my opinion concerning the position of director of a drug task force that consists of several counties and municipalities.
You indicate that the task force was formed by an interlocal agreement among the various entities, and is funded by a federal grant, which is administered by the Arkansas Department of Finance and Administration. It is my understanding the drug task force also receives state matching funds, but that the director's salary is paid entirely from federal funds. A board of directors consisting of sheriffs, chiefs of police, and prosecutors governs the task force. You state that the person holding the position of director would be an "employee" either of one of the counties or municipalities, or of a prosecuting attorney's office. It is my understanding that the intent is that this individual would be on that entity's payroll and would receive benefits from that entity. The entity would pay the salary directly to the director, and would be reimbursed from the grant funds.
The drug task force you have described appears to be the type of drug task force that is authorized by the Anti-Drug Abuse Act of 1986, a federal law (P.L. 99-570, codified throughout the U.S. Code). This federal law is referenced in A.C.A. § 16-21-147, which authorizes prosecuting attorneys to appoint deputy prosecuting attorneys and other employees under the program created by the federal law, at the salaries provided therein. These salaries are paid from federal grant funds that are administered through the state Department of Finance and Administration's Drug Law Enforcement Program. In addressing your question, I will assume that the drug task force in question is one that was created under the authority of the federal Anti-Drug Abuse Act of 1986.
You state that a member of the Arkansas House of Representatives has applied for the position of director. It is my understanding that this individual is also running for re-election to the House.
Your questions are:
 Is there any constitutional or statutory provision that would prohibit this person from serving in the legislature and being employed as director of the drug task force? Would it matter whether the person was an employee of a county, municipality or prosecutor's office?
RESPONSE
It is my opinion that service by a sitting legislator as director of the drug task force you have described is not prohibited by any state constitutional or statutory provision. However, the individual may be prohibited by the federal Hatch Act from running for re-election to the House. If the legislator is chosen for the position and continues to serve in the legislature (either because the Hatch Act does not apply or because he is merely serving out his current term, which the Hatch Act allows), it is my opinion that under common law principles concerning conflicts of interest, he must abstain from participating in any decision-making that might divide his allegiance between the various interests that are at stake. These conclusions are explained more fully below.
Constitutional Prohibitions
Your question implicates Article 5, §§ 7 and 10 of the Arkansas Constitution, both of which prohibit legislators, under certain circumstances, from holding other "offices."[1] It is my opinion that neither of these provisions applies to the situation you have described. My predecessor in office concluded in Opinion No. 93-432 that the position of director of a drug task force is not an "office" for purposes of Article 5, § 7. I agree with that conclusion and have attached a copy of that opinion for your review. The analysis set forth in that opinion as the basis for that conclusion likewise dictates the conclusion that the position of director of the drug task force is not an "office" for purposes of Article 5, § 10. Accordingly, these constitutional provisions do not prohibit service by a legislator as director of a drug task force.
Statutory Prohibitions
Your question also implicates the provisions of A.C.A. § 21-1-402. That provision states in pertinent part:
 (a)(1) Subject to any restrictions or conditions prescribed by the Arkansas Constitution, no person elected to a constitutional office may, after being elected to the constitutional office and during the term for which elected, enter into employment:
(A) With any state agency[.]
A.C.A. § 21-1-402(a)(1)(A).
The term "constitutional office," as used in A.C.A. § 21-1-402 above, is defined to include members of the state legislature. A.C.A. §21-1-401(1).
The term "state agency" is defined for purposes of A.C.A. § 21-1-402 as follows:
 (2) "State agency" means every board, commission, department, division, institution, and other office of state government whether located within the legislative, executive, or judicial branch of government and including state-supported colleges and universities.
A.C.A. § 21-1-401(2).
As an initial matter, I note that I need not address the question of whether counties, cities, and prosecuting attorneys' offices are "state agencies" within the meaning of A.C.A. § 21-1-402, because it is my opinion that the individual you have described would not actually be "employed" by any of these entities for purposes of A.C.A. § 21-1-402. Even if the individual were technically on the payroll of one of the cities, counties, or prosecuting attorneys' offices,[2] he would neither be accountable to those entities, nor actually paid from their funds. Nor would any of these entities have the authority to hire or fire this individual or to prescribe his duties. Rather, the director would be employed by the drug task force itself. He would be paid from federal funds that are ear-marked for the drug task force and would be accountable to the board of directors of the drug task force. Only that board has the authority to decide to hire or fire this individual and to prescribe his duties.
The question, therefore, is whether the drug task force is a "state agency," within the meaning of A.C.A. § 21-1-402. It is my opinion that it is not.
The definition of the term "state agency," quoted above, is not particularly helpful in determining whether the drug task force is a state agency, nor has the Arkansas Supreme Court had occasion to interpret the term, as used in A.C.A. § 21-1-402. However, the court has addressed the question of whether certain other entities were "state agencies" in other contexts, and in doing so, has provided some general guidance concerning this issue. See, e.g., Muse v. Prescott School Dist., 233 Ark. 789,349 S.W.2d 329 (1961) (school district was not a state agency); FaganElectric Co., Inc. V. Housing Authority, 216 Ark. 932, 228 S.W.2d 39
(1950) (housing authority was not a state agency). A primary factor considered by the court in both of these cases was the lack of state involvement with and control over the entity in question.
In my opinion, the lack of state involvement with and control over the drug task forces that are created under the authority of the federal Anti-Drug Abuse Act likewise indicates that these drug task forces are not state agencies for purposes of A.C.A. § 21-1-402. These drug task forces are not created by state law; they are created under the authority of federal law. The only reference in Arkansas state law to these drug task forces occurs in A.C.A. § 16-21-147, which merely authorizes certain actions that are necessary to the administration of drug task forces created under the federal Anti-Drug Abuse Act. The state involvement with the drug task forces is limited to the perfunctory disbursement of the available federal grant monies by the Department of Finance and Administration. The state exercises no control over the drug task forces. There are no state laws that govern the activities of these entities or that prescribe their duties, powers, or responsibilities. These are matters that are entirely under the purview of federal law, the federal grant documents, and the board of directors of each drug task force. Although drug task forces do receive state matching funds, the receipt of these funds is entirely contingent upon the provision of federal grants pursuant to federal law; the state's involvement with the provision of these matching funds is limited to disbursement as required by the federal grant provisions. Given the limited degree of state involvement with the drug task forces created under the federal Anti-Drug Abuse Act and its lack of any control over the drug task forces, I cannot conclude that these entities are "state agencies."
I must at this point distinguish the holding of South Central Ark. DrugTask Force v. Ray, 56 Ark. App. 30, 937 S.W.2d 682 (1997). In that case, the Arkansas Court of Appeals held that an employee of a drug task force was a "state employee" for purposes of receiving state workers' compensation benefits. This holding, however, was driven by the fact that the purpose of the state workers' compensation system is to provide coverage to "public employees" who are not covered by a private entity, and the employee in question was unquestionably not covered by a private entity. It was not necessary for the court to find that the drug task force was a state agency in order to reach its decision in that case, and the court did not address that question.
One other factor that bolsters my conclusion that A.C.A. § 21-1-402 does not prohibit a legislator from holding the position of director of a drug task force is the fact that Act 34 of 1999 is a criminal law. That is, violation of the provisions of Act 34 constitutes a serious criminal offense (a Class D felony) that carries severe criminal penalties. One of the most well-established rules of statutory interpretation is that criminal statutes are to be strictly construed, with all doubts resolved in favor of defendants. Heikkila v. State, 352 Ark. 87, 98 S.W.3d 805
(2003). Moreover, the Arkansas Supreme Court has explicitly stated that the courts cannot, and should not, by construction, create offenses under statutes that are not in express terms created by the legislature. Id.
These interpretive principles support my conclusion that A.C.A. §21-1-402 should not be interpreted to prohibit service by a legislator in the position of drug task force director.
The "Hatch Act"
Although it is my opinion that the dual service in question is not prohibited by state constitutional or statutory law, the individual in question may nevertheless be prohibited by the federal "Hatch Act" from running for re-election to the House. The Hatch Act is codified at 5 U.S.C. §§ 1501- to 1508. It provides in pertinent part as follows:
 A state or local officer or employee may not —
* * *
(3) Be a candidate for elective office.
5 U.S.C. § 1502(a)(3) (emphasis added).
The Act defines a "state or local officer or employee" as follows:
 "State or local officer or employee" means an individual employed by a State or local agency whose principal employment is in connection with an activity which is financed in whole or in part by loans or grants made by the United States or a Federal agency[.]
5 U.S.C. § 1501(4).
The Act defines "state or local agency" as follows:
 "State or local agency" means the executive branch of a State, municipality, or other political subdivision of a State, or an agency or department thereof[.]
5 U.S.C. § 1501(2)
Although I have opined that the drug task force is not a "state agency" for purposes of A.C.A. § 21-1-402, a determination would have to made as to whether the drug task force is a "state or local agency," within the meaning of the Hatch Act. This issue has not been decided by a court in a published opinion, nor has it been directly addressed in any administrative opinion letter. I note that the drug task force does seem to constitute a type of local agency, having been created by interlocal agreement among local jurisdictions. Moreover, as previously noted, its activities are funded primarily by federal grant monies. These factors appear to weigh in favor of a determination that if the legislator is chosen for the position of director of the drug task force, he would be prohibited by the Hatch Act from running for re-election to the House of Representatives.[3] Nevertheless, in the absence of judicial or regulatory guidance, I am not in a position to decide this issue definitively; it is a determination that must be made by the authorized federal regulatory authorities. These federal authorities should be consulted to definitively address this issue. The appropriate office to contact is the Office of Special Counsel, 1730 M Street NW., Suite 300, Washington, D.C. 20036 or 1-800-854-2824. In addition, helpful information is available at the website for the U.S. Office of Special Counsel: www.osc.gov.
If the legislator is appointed to the position and continues to serve in the legislature (either because the Hatch Act does not apply, or because he has withdrawn from the race for re-election and is merely serving out the remainder of his current term, see Footnote 3), he should remain cognizant of the potential for conflicts of interest that may arise in isolated instances. Such instances would arise when the particular facts of a situation would divide the individual's allegiance between the drug task force and the interests he represents as a legislator. In such instances, the individual should abstain from participating in any decision-making or other acts that would require him to act in the interest of one at the expense of the interest of the other.
The common law prohibition against conflicts of interest is reflected in the following description of the public policy underlying the principle:
 A public office is a public trust . . . and the holder thereof may not use it directly or indirectly for personal profit, or to further his own interest, since it is the policy of law to keep an official so far from temptation as to insure his unselfish devotion to the public interest. Officers are not permitted to place themselves in a position in which personal interest may come into conflict with the duty which they owe to the public, and where a conflict of interest arises, the office holder is disqualified to act in the particular matter and must withdraw.
67 C.J.S. Officers § 204. See also Ops. Att'y Gen. Nos. 2001-042; 2000-072; 99-349; 98-275; 94-283; and 94-446, citing Van Hovenberg v.Holman, 201 Ark. 370, 144 S.W.2d 719 (1940); Madden v. United StatesAssociates, 40 Ark. App. 143, 844 S.W.2d 374 (1992); Acme Brick Co. v.Missouri Pacific R.R., 307 Ark. 363, 821 S.W.2d 7 (1991); and 63A Am.Jur. 2d, Public Officers and Employees § 321.
The above-quoted policy statement concerning conflicts of interest makes clear that in situations where a common law conflict of interest is present, it may be appropriate for the affected public servant to abstain from participating in any decision-making procedure that would impact upon his or her conflicting interests, so as to avoid the temptation of placing a conflicting interest above the interest of those he was chosen to represent. This policy statement appears to indicate that the wrong to be avoided is the placing of a conflicting interest above public duty. The avoidance of such wrongs will be a continuing duty for the individual in question if he is chosen for the position of drug task force director.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/SA:cyh
Enclosure
[1] Article 5, § 7 states:
 No judge of the supreme, circuit or inferior courts of law or equity, Secretary of State, Attorney-General for the State, Auditor or Treasurer, recorder, or clerk of any court of record, sheriff, coroner, member of Congress, nor any other person holding any lucrative office under the United States or this State (militia officers, justices of the peace, postmasters, officers of public schools and notaries excepted), shall be eligible to a seat in either house of the General Assembly.
Article 5, § 10 states:
 No Senator or Representative shall, during the term for which he shall have been elected, be appointed or elected to any civil office under this State.
[2] I do not address the question of whether this individual, under the arrangement you have described, would be eligible to receive benefits from any of the participating cities, counties, or prosecuting attorneys' offices.
[3] He would not be prohibited by the Hatch Act, however, from completing his current term in the House. See U.S. Office of Special Counsel, State and Local Hatch Act Advisory: Elected Official Who Becomesa State Employee (March 10, 1998) (Elected official who became state employee not required to leave office before completion of term).