The Honorable Robbie Wills State Representative Post Office Box 306 Conway, Arkansas 72033-0306
Dear Representative Wills:
I am writing in response to your request for my opinion on a question I will paraphrase as follows:
 In light of the conclusions reached in Op. Att'y Gen. 2007-218 regarding in-kind services, are the attached in-kind services sections of Faulkner County's reappraisal contract lawful?
You have provided me with excerpts of the reappraisal contract and the reappraisal plan that reference the possible provision by five county appraisers of various in-kind services to the private contractor. The contract provides that if the county appraisers perform services for the contractor, the amount owed to the contractor will be reduced in a recited amount that presumably reflects the value of the county appraisers' services. Section 12.1 of the reappraisal plan provides as follows:
 In regards to the appraisal of new construction, the contractor shall use the Assessor's existing five appraisers and one data entry personnel. These members of the Assessor's staff shall also be used for the valuation and data entry of new subdivisions, replats, and annexations, during the duration of the contract, with the contractor being responsible for the final valuation. The Assessor's office will have use of these staff members for, but not limited to, matters such *Page 2 
as field checks and county equipment appraisals. The use of these staff members are [sic] to be considered as in kind services and are [sic] to be shown as a deduction on the amount of the bid.
You represent that the salaries of Faulkner County employees working on the valuation of new construction are paid by the county and that these employees receive no salaries or benefits from the private contractor.
With respect to the provision of in-kind services by Faulkner County, you further offer the following analysis:
 [T]he Assessment Coordination Department's current rules and regulations seem not to allow this. The pertinent rule is as follows:
RULE 3.40 PAYMENT IN KIND SERVICES
 All reappraisal contracts will allow for "payment in kind" services to be provided by the county employees who participate in the reappraisal. This provision will require the appraisal contractor to reimburse the county for work contributed to the reappraisal project by county employees, on a pre-agreed basis. The provision will also provide for the appraisal contractor to have reasonable control over those employees regarding job duties, expected production, and work quality. The provision will also allow the appraisal contractor to reject poor quality work performed by a county employee, which will relieve the contractor of any obligation to pay for such work.
You do not address in your analysis how you feel this rule conflicts with the Faulkner County reappraisal plan and contract. My inquiries reveal that the Arkansas Assessment Coordination Department (the "ACD") in fact interprets Rule 3.40 as authorizing a county to provide in-kind services to private reappraisal contractors. However, in the wake of my issuing Op. Att'y Gen. 2007-218, which I will discuss in my response below, the ACD has reportedly concluded that Rule 3.40 is inconsistent with the statutes discussed below. The ADC accordingly does not enforce the rule and has expressed its intent to strike Rule 3.40 from the books, *Page 3 
instead adopting the position that a county's provision of in-kind reappraisal services to a private contractor is impermissible in all instances.
Finally, you suggest that the situation in Faulkner County is distinguishable from that discussed in Op. Att'y Gen. 2007-218, prompting you to offer the following:
 [A]lthough that opinion also dealt with in kind services, the facts are different than Faulkner County's case. Currently, the Assessment Coordination Department (ACD) is using the above opinion as a blanket reason not to allow any in-kind services in reappraisal plans and contracts starting for this year. Therefore, a new opinion on this different situation is needed by both Faulkner County as well as the ACD which would like to clarify the matter one way or the other.
RESPONSE
In my opinion, for the reasons discussed below, I believe a contract of the sort entered into by Faulkner County might well run afoul of the ethical proscriptions discussed in the attached Op. Att'y Gen. 2007-218.
Before discussing the substance and scope of Opinion 2007-218, I will address your suggestion that the above described factual circumstances in Faulkner County are in some sense materially distinguishable from those addressed in my previous opinion. The questions addressed in Opinion 2007-218 read as follows:
 May one or more employees of a county assessor be lawfully employed on a part-time, after hours basis by the contractor performing countywide mass appraisals? Would such an arrangement violate provisions of A.C.A. 14-14-1202, governing ethical standards for county government officers and employees?
I agree that the situation addressed in my previous opinion is distinguishable from the one you describe as applying in Faulkner County, inasmuch as the Faulkner County employees at least nominally perform their tasks as paid employees of the county, whereas the employees at issue in my previous opinion were serving after hours as part-time paid employees of a private contractor. However, in terms of the ethical concerns addressed in my previous opinion, I do not consider this distinction material — a conclusion apparently shared by the ACD in adopting a *Page 4 
blanket rule proscribing in-kind service by county employees to a private contractor.
In my previous opinion, I summarized my conclusions as follows:
 In my opinion, the answer to both of your questions may well turn on whether the private employment bears in any fashion upon the referenced "countywide mass appraisals." If it does so directly, meaning that the private employment would constitute performance of the contractor's contractual obligations to the county, I believe the private employment would be barred by the provisions of A.C.A. § 14-14-1202
(Supp. 2007). The statute further bars a county employee from benefiting indirectly from a county contract. Only a finder of fact could determine whether the statute applied in any given instance. Finally, depending upon the facts, the common-law prohibition against conflicts of interests might bar the dual employment of any given public employee.
As I noted in my previous opinion, A.C.A. § 14-14-1202 provides in pertinent part:
 (a)(3) The officer or employee may not use his or her office, the influence created by his or her official position, or information gained by virtue of his or her position to advance his or her individual personal economic interest or that of an immediate member of his or her family or an associate, other than advancing strictly incidental benefits as may accrue to any of them from the enactment or administration of law affecting the public generally.
 *** (c)(1) RULES OF CONDUCT. No officer or employee of county government shall:
 (A)(i) Be interested, either directly or indirectly, in any contract or transaction made, authorized, or entered into on behalf of the county or an entity created by the county, or accept or receive any property, money, or other valuable thing for his or her use or benefit on account of, connected with, or growing out of any contract or transaction of a county. *Page 5 
(Emphasis added.)
In my opinion, the fact that the Faulkner County private contractor is charged with ultimate responsibility for the quality and accuracy of his work implies that he will have supervisory authority over the county appraisers working to fulfill his contractual obligations to the county. Indeed, although the ACD has concluded that Rule 3.40 is unenforceable, the practical realities of managerial control appear to be reflected in the Rule's mandate that a private reappraisal contractor have supervisory control over county appraisers, including the authority to reject their work outright. My inquiries reveal that under many such in-kind contracts the private contractor even has the authority to dismiss an appraiser. Moreover, to the extent that the appraisers' salaries are at least in part paid out of the contractually negotiated credit for their services, it might be characterized as a fiction to suggest that the county is even paying the employees. Under these circumstances, I believe the highlighted proscription might well bar a contract of the sort in effect in Faulkner County.
In my opinion, the Faulkner County contract further implicates the provisions of A.C.A. § 21-8-108 (Repl. 2004), which provides in pertinent part:
 (a) No public servant shall:
 (1) Receive a gift or compensation as defined in § 21-8-401 et seq.,[1] other than income and benefits from the governmental body to which he or she is duly entitled, for the performance of the duties and responsibilities of his or her office or position[.]
(Emphasis added.) As reflected in the highlighted portion of this statute, this proscription applies only when the outside compensation is for the performance of services an individual would be obliged to perform in the course of his duties as a public employee. As noted above, I believe that the contractual credit to the *Page 6 
county by a private contractor for a county appraiser's services might reasonably be characterized as an indirect payment by the private contractor for services that the appraiser, in the absence of the private contract, would be obliged to perform as a purely public employee. Given these circumstances, I believe a finder of fact might well conclude that the contract violated the statute just cited.
Finally, I believe that the arrangement in Faulkner County might well create a common-law conflict of interests, which has been defined as follows:
 A public office is a public trust . . . and the holder thereof may not use it directly or indirectly for personal profit, or to further his own interest, since it is the policy of law to keep an official so far from temptation as to insure his unselfish devotion to the public interest. Officers are not permitted to place themselves in a position in which personal interest may come into conflict with the duty which they owe to the public, and where a conflict of interest arises, the office holder is disqualified to act in the particular matter and must withdraw.
67 C.J.S. Officers § 204. See also Ops. Att'y Gen. Nos. 2001-347; 99-449; 98-275, 94-283, and 94-446, citing Van Hovenberg v. Holman,201 Ark. 370, 144 S.W.2d 719 (1940); Madden v. United StatesAssociates, 40 Ark. App. 143, 844 S.W.2d 374 (1992); Acme Brick Co. v.Missouri Pacific R.R., 307 Ark. 363, 821 S.W.2d 7 (1991); and 63A Am.Jur. 2d Public Officers and Employees § 321. As I noted in Opinion2007-218, this office has in the past applied this doctrine in addressing the conduct of public employees as well as officers. See,e.g., Op. Att'y Gen. 2001-347.
When a public appraiser is contractually obligated to serve subject to the direction of a private contractor who is indirectly paying his salary, a clear conflict of interests would appear to exist. As a public employee, the appraiser's paramount allegiance must be to the public welfare. However, if the appraiser's employment is in any sense controlled by a private actor, that paramount allegiance will be necessarily compromised.
In short, then, I believe the program in effect in Faulkner County might invite challenge as flouting the ethical proscriptions discussed above. Even conceding that the Faulkner County contract creates circumstances different from those *Page 7 
discussed in opinion 2007-218, I believe the contract raises similar ethical concerns.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM/JHD:cyh
Enclosure
[1] Subsection 21-8-402(7)(A) of the Code (Supp. 2007) defines the term "compensation" as follows:
 "Income" or "compensation" means any money or anything of value received or to be received as a claim for future services, whether in the form of a retainer, fee, salary, expense, allowance, forbearance, forgiveness, interest, dividend, royalty, rent, or any other form of recompense or any combination thereof. It includes a payment made under obligation for services or other value received.