The Honorable Johnny Key State Representative 1030 Highway 62 E Mountain Home, Arkansas 72653-3216
Dear Representative Key:
I am writing in response to your request for an opinion concerning a possible conflict of interest in connection with a waste tire project in northwest Arkansas involving the Northwest Arkansas Regional Solid Waste Management District ("SWMD"), the Northwest Arkansas Economic Development District ("EDD"), DAMCO, Inc., and Tire Disposal Systems, Inc. Your question pertains specifically to the chairman of the board of the EDD, who you report also is president and owner of DAMCO, Inc., a private company that operates a waste tire project (the "DAMCO Tire Project") within the SWMD's service area. You further report that the property which is the site of the DAMCO Tire Project is owned by the individual in question and leased to the SWMD for $1.00. You have asked whether there is a conflict of interest between the parties in this situation.
RESPONSE
Only a finder of fact familiar with all of the surrounding circumstances could definitively opine on this matter. It is possible that a conflict of interest is present in this situation, making it appropriate and necessary for the affected individual to abstain from participating in any decision-making procedure that would impact upon his personal interests. The question of whether the individual acted in a particular matter where he was disqualified to act is not one, however, that can be resolved in an opinion from this office. The opinion-rendering function of this office is limited instead to discussing the applicable law, not to determining the facts and applying the law, as your question invites me to do. You may wish to direct your question to the Arkansas Ethics Commission, which is specifically *Page 2 
authorized to investigate allegations of ethical impropriety, and which is further authorized to issue advisory opinions upon request regarding ethical matters.
In determining what ethical strictures might apply in this situation, I note as an initial matter that there are no provisions in the applicable subchapter governing the EDD (A.C.A. §§ 14-166-201 — 205 (Repl. 1998 Supp. 2007) addressing conflicts of interest or recusal of board members. Nonetheless, in my opinion consideration must be given to the prohibition against conflicts of interest under the common law, as well as a conflict of interest provision in the Arkansas Code that applies to public officials. With regard to the common law prohibition, one of my predecessors aptly observed as follows:
 The common law prohibition against conflicts of interest is reflected in the following description of the public policy underlying the principle:
 A public office is a public trust . . . and the holder thereof may not use it directly or indirectly for personal profit, or to further his own interest, since it is the policy of law to keep an official so far from temptation as to insure his unselfish devotion to the public interest. Officers are not permitted to place themselves in a position in which personal interest may come into conflict with the duty which they owe to the public, and where a conflict of interest arises, the office holder is disqualified to act in the particular matter and must withdraw.
 67 C.J.S. Officers § 204. See also Ops. Att'y Gen. 1999-349; 98-275; 94-283; and 94-446, citing Van Hovenberg v. Holman, 201 Ark. 370, 144 S.W.2d 719 (1940); Madden v. United States Associates, 40 Ark. App. 143, 844 S.W.2d 374
(1992); Acme Brick Co. v. Missouri Pacific R.R., 307 Ark. 363, 821 S.W.2d 7 (1991); and 63A Am. Jur. 2d Public Officers and Employees § 321.
 The above-quoted policy statement concerning conflicts of interest makes clear that in situations where a common law conflict of interest is present, it may be appropriate for the affected public servant to abstain from participating in any decision-making procedure that would impact upon his or her personal interests, so as *Page 3 
to avoid the temptation of placing his self-interest above the interest of those he was elected to represent. This policy statement appears to indicate that the wrong to be avoided is the placing of self-interest above public duty. Whether a wrong of this nature has occurred is entirely a question of fact and can only be established by the presentation of factual evidence showing both the motivation and the effect of the public servant's act.
Op. Att'y Gen. 2000-072.
In Op. Att'y Gen. 93-184, another of my predecessors summarized the operative inquiry as being whether the officer "has a personal interest which might interfere with the unbiased discharge of his duty to the public." The furtherance of the officer's personal interest is thus the focal point of inquiry in determining whether an unlawful conflict of interest exists at common law. See Van Hovenberg v. Holman,supra.
The pertinent statutory ethical provision is set forth at A.C.A. § 21-8-304(a) (Supp. 2007), which provides:
 No public official or state employee shall use or attempt to use his or her official position to secure special privileges or exemption for himself or herself or his or her spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he or she has a substantial financial relationship that is not available to others except as may be otherwise provided by law.[1]
As my predecessor noted in Op. Att'y Gen. 2002-297, "[t]his provision codifies certain aspects of the common law conflict of interest principle. As with the *Page 4 
common law rule, evaluating the situation under this Code section requires a factual determination."
An economic development authority is a public, regional entity, and as such its directors are subject to these ethical proscriptions, in my opinion. Accord Op. Att'y Gen. 2004-230. I have limited information regarding interactions between the EDD, the SWMD, and DAMCO, Inc., but it is my understanding that the EDD is directly involved in planning and overseeing the waste tire management program for the SWMD.[2] A conflict of interest could therefore conceivably arise as a consequence of the EDD board member's ownership of the company that operates the waste tire site. An officer clearly must abstain from participating in any decision-making that would impact upon his or her personal interests. However, only a finder of fact reviewing the particular circumstances would be in a position to definitively determine the existence of a conflict, and whether any ethical violations have resulted. In this regard, you may wish to consider seeking the review of the Arkansas Ethics Commission, which is vested with authority to investigate and address alleged violations of A.C.A. § 21-8-304.See A.C.A. § 21-8-303(a)(2) (Repl. 2004). See also A.C.A. §§ 7-6-217(g)(2) (regarding advisory opinions) and-218 (citizen complaints) (Supp. 2007).
While I am unable to resolve the issue you have posed due to its factual nature, the foregoing will hopefully be of assistance in guiding the legal analysis.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
[1] It will be noted that the term "public official" is defined by A.C.A. § 21-8-402 (17) as "a legislator or any other person holding anelective office of any governmental body." (Emphasis added.) As my immediate had occasion to note, however, this definition does not appear to govern or define the term "public official" as used in A.C.A. § 21-8-304. Op. Att'y Gen. 2006-137 (citing A.C.A. § 21-8-402, the introductory language of which applies the definitions of that section to A.C.A. § 21-8-401 et seq. and A.C.A. §§ 21-8-601 et seq.,-701 etseq., and-801 et seq., but not-301 et seq.). In my opinion, therefore, A.C.A. § 21-8-304 applies to economic development district board members. See also Op. Att'y. Gen. 2004-230 (opining that Section 21-8-304 was the applicable provision as to regional intermodal facilities authority members, rather than A.C.A. § 14-14-1202, pertaining to counties and A.C.A. § 14-42-107, pertaining to municipalities).
[2] The SWMD receives grant funds through the Arkansas Department of Environmental Quality for the waste tire management program.See A.C.A. § 8-9-405 (Supp. 2007).
 *Page 1