2011 Ark. App. 319

David **BOLEN** and Marian Bolen, Jim Blakely and Frances Blakely, Doug Hurley and Melodie Hurley, Diana Gallagher, Roma Gray, Leon Gregory and Helen Gregory, Don Johnson and Debbie Johnson, Michael Luna, and Lanny Samples, Appellants

v.

**WASHINGTON COUNTY ZONING BOARD OF ADJUSTMENTS** a/k/a **Washington County Planning Board** and Big Red Dirt Farm, LLC, Appellees.

No. CA 10–352.

Court of Appeals of Arkansas.

May 4, 2011.

James Ellis Crouch and Matthew L. Fryar, Little Rock, for appellants.

Charles Robert Nestrud and Heather Goodson Moody, Little Rock, for appellees.

LARRY D. VAUGHT, Chief Judge.

This case involves a zoning decision made by the Washington County Quorum Court granting appellee Big Red Dirt Farm, LLC, a conditional-use permit to operate a rock quarry on land bordering appellants Marian and David Bolen's property. The Bolens argue that the Washington County Circuit Court erred in its refusal to grant them a de novo, jury-trial review of the quorum court's decision. We see no error and affirm the decision of the trial court.

The zoning ordinance at issue in this case was enacted in 2006 by the Washington County Quorum Court, and it concerned only the unincorporated areas of the county. The ordinance identified a single zone for the entire county—"agricultural and single[-]family residential"—and authorized only the following uses: livestock production, farming, silviculture (the practice of controlling the establishment, growth, composition, health, and quality of forests), aquaculture, and detached dwellings for one (1) family. The ordinance further provided that any other uses must be approved by a conditional-use permit.

At the time this zoning ordinance was initially enacted, Big Red was engaged in a clay- and limestone-extraction operation in the unincorporated area of the county. The extraction operation was "grand-fathered" in as a nonconforming use. In 2008, Big Red was notified that if it desired to expand its limestone-extraction operation (which would require dynamite blasting into the formation) it would need a conditional-use permit. In response, Big Red submitted a permit application seeking a transformation of its use of the formation from primarily a surface (red dirt) mining operation to primarily a deep-limestone-quarrying operation.

The initial application was denied by the Washington County Planning Board (the Board of Zoning Adjustment), and the decision was appealed to the Washington County Circuit Court. However, the circuit court remanded the case to the Washington County Quorum Court based on a provision contained in Arkansas Code Annotated section 14–17–209 (Repl.1998), which provides:

Zoning ordinance—Board of zoning adjustment

(a) The county planning board shall have authority to prepare, or to cause to be prepared, a zoning ordinance for all or part of the unincorporated area of the county, which ordinance shall include both a map and a text. The zoning ordinance may regulate the location, height, bulk, number of stories, and the size of building; open space; lot coverage; density and distribution of population; and the uses of land, buildings, and structures. It may require off-street

parking and loading. It may provide for districts of compatible uses, for large scale unified development, for the control and elimination of uses not in conformance with provisions of the ordinance, and for such other matters as are necessary to the health, safety, and general welfare of the county. The zoning ordinance shall designate districts or zones of such shape, size, or characteristics as deemed advisable for all, or part, of the unincorporated area of the county. The regulations imposed within each district or zone shall be uniform throughout the district or zone.

(b) The determination of zones shall be consistent with any officially adopted plans for the area to be zoned. In the development of zoning districts and their boundaries, due consideration shall be given to the adopted plans of municipal planning commissions for extraterritorial planning areas.

(c) The zoning ordinance shall be observed through denial of the issuance of building permits and use permits.

(d) It shall be unlawful to erect, construct, reconstruct, alter, maintain, or use any land, building, or structure in violation of any ordinance of the county quorum court.

(e) The zoning ordinance shall provide for a board of zoning adjustment which shall be formed in either of the following ways:

(1) A minimum of three (3) residents of the county may be appointed to the board of zoning adjustment; or

(2) The planning board as a whole may sit as the board of zoning adjustment.

(f) Whenever a separate board of zoning adjustment is established, appointments, length of term, vacancies, removal, and compensation shall be the same as for the county planning board.

(g) The board of zoning adjustment shall have the following functions:

(1) To hear appeals from administrative decisions with respect to the enforcement and application of the ordinance and affirm or reverse, in whole or part, the administrative decisions;

(2) To hear requests for variances from the literal provisions of the zoning ordinance in instances where strict enforcement of the zoning ordinance would cause undue hardship due to circumstances unique to the individual property under consideration and to grant such variances only when it is demonstrated that such action will be in keeping with the spirit and intent of the provisions of the zoning ordinance. The board of zoning adjustment may impose conditions in the granting of a variance to ensure compliance and to protect adjacent property.

(h) The board of zoning adjustment shall not permit, as a variance, any use in a zone that is not permitted under the ordinance.

(i)(1) Decisions of the board of zoning adjustment in respect to subsections (a)-(h) of this section shall be subject to appeal only to a court of record having jurisdiction.

(2)(A) However, a county quorum court may elect to act as a board of administrative appeal prior to an appeal to a court of record from a decision of the board of zoning adjustment.

(B) The county judge shall be the chair of the board of administrative appeal but shall vote only in the event of a tie.

(C) The county quorum court shall determine the number of quorum court members who shall sit on the board of administrative appeal.

(3) Any appeal concerning roads shall be appealed directly to circuit court.

The quorum court considered Big Red's petition on March 26, 2009, and ultimately granted the company a conditional-use permit to operate a rock quarry in the zoned area. However, the quorum court's approval was conditioned on certain restrictions aimed at making the quarry operation compatible with the surrounding residential and agricultural land uses.

Following the quorum court's decision, the Bolens and other surrounding landowners filed an appeal in Washington County Circuit Court. The Bolens sought a de novo review of the quorum court's decision and a jury trial on the matter in accordance with Arkansas Code Annotated § 14–17–211 (Repl.1998), which states:

> Appeals to circuit court
>
> In addition to any remedy provided by law, appeals from final action taken by administrative, quasi-judicial, and legislative agencies concerned in the administration of this subchapter may be taken to the circuit court of the appropriate county where they shall be tried de novo according to the same procedure applicable to appeals in civil actions from decision of inferior courts, including the right of trial by jury.

The Washington County Quorum Court responded and Big Red petitioned to intervene (and was permitted to do so).

In their appeal to the circuit court, the Bolens alleged that the conditional-use permit should have been denied because the only two uses permitted by the zoning ordinance were agricultural and single-family residential; quarry mining was not included in either of the specific definitions for those two defined and limited uses. Responsively, Big Red argued that the quorum court's decision was legislative in nature, and as such, the Bolens were entitled to neither a de novo review nor a jury trial on the matter.

After requesting and considering briefs on the issue, the circuit court initially found in favor of the Bolens and set the matter for jury trial. On October 2, 2009, Big Red filed a notice of appeal from the circuit court's decision. However, based on a case handed down by the Arkansas Supreme Court on October 22, 2009, which unequivocally held that all zoning decisions by legislative bodies are legislative in nature, Big Red asked the circuit court to reconsider its decision. *PH, LLC v. City of Conway*, 2009 Ark. 504, 344 S.W.3d 660.

The circuit court reconsidered the matter and found that the same reasoning contained in the *PH, LLC* case applied to the case at bar. The trial court specifically noted that where the decision is made by the county's legislative body and when section 14–17–209(h) is read in connection with subsection (g), the Board of Zoning Adjustment is not given the authority to change the specified land use contained in a zoning ordinance. The circuit court further held that the quorum court "did, in fact, change the land use." Specifically, the circuit court held:

> The Court is of the opinion that, again, when the Quorum Court awarded a conditional use permit to Big Red Dirt Farm, LLC, it made a zoning decision because it changed the land use authorized by the zoning ordinance. And according to the decisions of the Supreme Court, the Quorum Court's decision was legislative [ ] in nature. Therefore the Court is of the opinion that the portion of Ark.Code Ann. [§ ] 14–17–211, which allows for a de novo jury trial for an appeal of legislative decision of county agencies is unconstitutional just as the Arkansas Supreme Court held in *Wenderoth v. City of Fort Smith*.... Therefore, the [Bolens] are not entitled to a de novo review, and they are not entitled to a jury trial.

It is from this decision that the Bolens appeal.

In order to resolve this appeal, we must initially determine whether the quorum court's decision to allow Big Red's quarry operation was legislative or administrative in nature. If the decision of the quorum court was legislative, the circuit court's refusal to hear the case de novo and grant a jury trial should be affirmed. If it was administrative, the case should be reversed and remanded for jury trial. However, differentiating the legislative from the administrative is not a simple task.

[7]Our supreme court has held that in making the determination we must look to the character of the act (as opposed to the label) in order to determine whether it is legislative or administrative. *City of Fort Smith v. McCutchen*, 372 Ark. 541, 279 S.W.3d 78 (2008). If the act sets policy, it is legislative; if it effectuates policy, it is administrative. *Id.* at 545, 279 S.W.3d at 82. According to the court's reasoning, the enactment and amendment of local zoning is legislative and the sole, nondelegable duty of the local governing body. In contrast, the execution and enforcement of the zoning laws are administrative tasks and hence, delegable.

In this case, it is clear that the initial creation of the two zones—agricultural and single-family residential—and the designation of uses permitted in those areas—livestock production, farming, silviculture, aquaculture, and detached dwellings for a single family—are legislative acts. In contrast, the execution and enforcement of local zoning through, for example, inspections, setting of fee schedules, and issuance of permits, are administrative tasks. However, the grant (or denial) of a conditional-use permit under a zoning ordinance falls within an equivocal and confusing middle ground.

In *Rolling Pines v. City of Little Rock*, 73 Ark.App. 97, 40 S.W.3d 828 (2001), the board of adjustment approved a conditional-use permit for the placement of a manufactured home in a single-family residential zone. Under the zoning ordinance at issue, manufactured homes were contemplated and discussed. The ordinance set out certain conditions prior to approval— including a certain roof pitch, removal of transport elements, and the building of an underpinning using permanent materials. The zoning ordinance specifically authorized [8]manufactured homes and set out specific requirements for approval. As such, we found that because the board of adjustment's grant of a conditional-use permit involved no "policy" function and did not grant a new land use, the act was administrative in nature. *Id.* at 104–05, 40 S.W.3d at 833–34. In so finding, the court noted that the board simply followed the prescripts of the land-use plan set out in the ordinance. *Id.* at 104–05, 40 S.W.3d at 833–34.

Similarly, in a recently published decision, the supreme court considered whether a municipality's decision to grant or deny an application for conditional use under a zoning ordinance was a legislative or quasi-legislative act requiring a de novo review by the circuit court. *King's Ranch of Jonesboro, Inc. v. City of Jonesboro*, 2011 Ark. 123, 2011 WL 1177097. King's Ranch sought permission to operate a group home for abused and neglected children in a 4900–square–foot home located on a ten and one-half acre tract of property within the City of Jonesboro. The tract of land was located in a district that was zoned "residential." In its review of the matter, the trial court found that, because deciding whether a residential home fit within the strictures of a "residential" zone was "substantially similar to that of rezoning," the act was legislative in nature. *Id.* at 4. However, the supreme court disa-

greed and anchored its decision in the nature of the act. *Id.* at 4. The court noted that under the provisions of the ordinance in question, the granting or denying of a conditional-use permit was "a decision reached by applying the facts to the provisions of the existing [o]rdinance." *Id.* at 4. The court noted that the municipality simply analyzed whether the proposed conditional use complied "with the already existing provisions of the [ordinance]," and as such the act was administrative in nature. *Id.* at 4.

However, the facts of the case before us are quite different. Under the Washington County ordinance there are only two defined zones—agricultural and residential. Based on our reading of the ordinance, including the designated potential uses for the zones, the board of adjustment (an administrative arm) was without the delegated power to grant a conditional-use permit to allow Big Red to operate a mining business. More precisely, the ordinance in question does not set out mining as a permitted "use" and does not contain a corollary scheme of conditions to guide the board in an administrative review of the mining-use application. In order to make any determination about mining, new land uses and restrictions would have to be defined—all of which are policy determinations, ergo legislative determinations. As such, we hold that the conditional-use permit that was granted to Big Red by the quorum court could not have been issued by the board of adjustment.

However, the quorum court was appropriately authorized to issue the conditional-use permit implicated in this case. The Arkansas legislature delegated to the quorum court the legislative authority to engage in comprehensive land-use planning and to classify various zones and authorize and deny certain land uses within those zones. In *Mings v. City of Fort Smith,* our supreme court described why these decisions are legislative, with limited review by the courts:

Zoning is a public matter. While the rights and duties of landowners, neighbors, and the general public conferred and required by zoning laws must sometimes be interpreted and protected by the courts, we should recognize that basic land use planning is a legislative function in which we should interfere only when necessary. The plan or plans of the municipality shall be prepared in order to promote, in accordance with present and future needs, the safety, morals, order, convenience, prosperity and general welfare of the citizens; and may provide, among other things, for efficiency and economy in the process of development, for the appropriate and best use of land, for convenience of traffic and circulation of people and goods, for safety from fire and other dangers, for adequate light and air in the use and occupancy of buildings, for healthful and convenient distribution of population, for good civic design and arrangement, for adequate public utilities and facilities, and for wise and efficient expenditure of funds.

That language should be kept in mind, and neither we nor the trial courts should succumb to the temptation to treat zoning matters as ordinary adversary proceedings in which members of the public have no protectible interest. That temptation is indeed present. In the landmark case declaring the constitutionality of land use planning and zoning to achieve it, *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926), the U.S. Supreme Court analogized to the common law of nuisance. It should be realized in our time, however, that we are not dealing with the typical adversary

proceeding, and our role should be to defer whenever possible to the legislative function of the city board in zoning disputes. *See* M. Gitelman, *Judicial Review of Zoning in Arkansas*, 23 Ark. L.Rev. 22 (1969).

288 Ark. 42, 48, 701 S.W.2d 705, 708 (1986).

Based on our collective understanding of governing case law and Arkansas's statutory-zoning scheme, we are convinced that the conditional-use permit granted in this case was a legislative act. The underlying zoning ordinance did not provide for either a quarry or extraction land use. It also did not establish any development requirements for a landowner who desired to engage in quarrying as a conditional use. The quorum court's decision incorporates into the county's land-use plan a *new* use (extraction) in an area previously zoned exclusively agricultural and residential. The quorum court also established numerous developmental restrictions, including installation of a four-foot high chain link fence and an eight-foot high berm with an evergreen vegetation screen and a one hundred-foot buffer. The quorum court's decision was in essence a new ordinance that imposed conditions regarding traffic flow and hours of operation for blasting and crushing. The approval and accompanying restrictions followed an analysis of needs and appropriate and desired public policy.

According to the record, the planning director recommended the quarry be approved because "red dirt, rock, and other extraction materials [were] materials ... needed to create homes and infrastructure in Northwest Arkansas. These materials must come from somewhere, and it makes sense from a planning and use standpoint to locate a quarry in the vicinity of other quarries, and in an area where rock is already exposed." The needs of the surrounding property owners were also taken into consideration by the quorum court in crafting the restrictions—including a limit on blasting times, traffic-flow rules, and buffer zones. When the actions by the quorum court here are compared with the actions in the supreme court's *Summit Mall Company, LLC v. Lemond* case, the legislative nature of the quorum court's decision here is apparent.

In *Summit Mall*, the Board's action in enacting Ordinance No. 18,456 was clearly legislative. Not only did it revise the 1987 ordinance and the preliminary approval of the PCD, but it added new, special conditions respecting lighting, curbs, sidewalks, a perimeter ring around the site, security fencing around Camp Aldersgate, a widening of Shackleford Road, and other actions to improve the infrastructure of the impacted area. This was not merely zoning in conformity with a previously adopted land-use development plan, but a comprehensive zoning effort which included numerous new requirements with future ramifications.

355 Ark. 190, 201, 132 S.W.3d 725, 732 (2003).

Although we are left with no doubt that the decision of the quorum court here was legislative in nature, the question still remains as to whether the trial court erred in its grant of Red Dirt's motion to reconsider and its ultimate denial of a jury trial to the Bolens. We will affirm the circuit judge's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *City of Little Rock v. Breeding*, 273 Ark. 437, 619 S.W.2d 664 (1981). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court based on the entire evidence is left with a firm conviction that a mistake has been committed. *Chavers v. Epsco, Inc.*, 352 Ark. 65, 70, 98 S.W.3d 421, 423 (2003).

Here, the trial court specifically relied on the supreme court's *City of Conway* decision in its finding that it was without constitutional authority to conduct a de novo review or conduct a trial by jury of a legislative decision. In *PH, LLC v. City of Conway,* our supreme court held

that zoning decisions by city boards are legislative in nature and a person is not entitled to a de novo circuit court review or a jury trial. We specifically hold that zoning decisions, whether grants or denials, are legislative in nature. Accordingly, the procedure set forth in section 14–56–425 does not apply. Moreover, because our holding in *Camden Comm. Dev. Corp. v. Sutton,* 339 Ark. 368, 5 S.W.3d 439 (1999), involved a denial of a zoning request and has lent confusion to this issue, we overrule it.

2009 Ark. 504, at 10, 344 S.W.3d at 666. Based on this precedent, we affirm the trial court's decision that the Bolens were not entitled to either a de novo review or a jury trial in circuit court.

Affirmed.

GRUBER and BROWN, JJ., agree.