

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–13–856

JIMMY LEWIS and JILL LEWIS, d/b/a
DOWNTOWN TOWING
                                    APPELLANTS

V.

BENTON COUNTY, ARKANSAS
                                    APPELLEE

Opinion Delivered May 21, 2014

APPEAL FROM THE BENTON
COUNTY CIRCUIT COURT
[NO. CV-2012-1577]

HONORABLE BRAD KARREN,
JUDGE

AFFIRMED

**BILL H. WALMSLEY, Judge**

The Benton County Circuit Court denied appellants Jimmy and Jill Lewis d/b/a Downtown Towing's application to use a portion of their property for storing wrecked and impounded vehicles. In its judgment, the trial court specifically found that the Lewises' due-process rights were not violated. The Lewises' sole point on appeal is that a recused board member's continued participation in the application process deprived them of their due-process rights. We affirm.

The Lewises live in a subdivision called Meadow Wood in Siloam Springs. When the Lewises moved there in 2006, there were no protective covenants in the residential neighborhood. In December 2007, the Lewises opened Downtown Towing near their home. The evidence shows that complaints about the business began almost immediately, including multiple complaints by a neighbor, Kenneth Knight, who was later appointed as a member

of the Benton County Planning Board (Planning Board) in 2009. When the Lewises sought to use a lot on their property for temporary storage of wrecked and impounded vehicles, they were told that they must apply for a large-scale development permit. On March 15, 2012, the Lewises submitted their application.

On April 18, 2012, the Planning Board held a Technical Advisory Committee (TAC) meeting. The meeting minutes reveal that, under a section entitled "general public comments," Knight voiced his opposition to the Lewises' project. Knight's concerns were the decreased property values it would cause, the increased traffic through the neighborhood, the nuisance created by lights and noises, and possible water contamination. Another neighbor raised similar concerns, also noting that she could see the wrecked vehicles from her home.

On May 16, 2012, the Planning Board held a public hearing. Knight was not present. Jill Lewis answered questions from the Planning Board members, and she chose to table the matter to give her more time to gather additional information to present to the Planning Board.

The Planning Board held another public hearing on June 6, 2012. Knight was present for roll call; however, the meeting minutes indicate that he recused from voting on the Downtown Towing project. Staff made several recommendations, to which the Lewises agreed. The Planning Board then opened the meeting for public comments. At least six neighbors voiced opposition to the Lewises' proposed use of their land, including Knight. The Planning Board then voted against the Lewises' proposal five to one. The Planning Board's denial was based on the Lewises' failure to present adequate evidence that the proposed land

use would be consistent and compatible with existing patterns of development in the area and because the potential nuisance mitigation measures were deemed insufficient to ensure such compatibility.

Pursuant to Ark. Code Ann. § 14-17-203(g)(1)(A) (Repl. 1998), a county quorum court may elect to act as a board of administrative appeal prior to an appeal to circuit court from a decision of the county planning board. In July 2012, the Lewises appealed to the Benton County Justice of the Peace, who appointed three justices to sit on a panel (Appeals Board) pursuant to Ark. Code Ann. § 14-17-203(g)(1)(C). The Lewises argued, in part, that Knight's continued participation in the process after recusing due to a conflict of interest violated their due-process rights. Once again, Knight and approximately five other property owners in Meadow Wood voiced opposition to the Lewises' proposal. The Appeals Board voted two to one to uphold the Planning Board's decision.

The Lewises then appealed to the Benton County Circuit Court. Arkansas Code Annotated section 14-17-211 (Repl. 1998) provides that, in addition to any remedy provided by law, appeals from final action taken by administrative, quasi-judicial, and legislative agencies may be taken to the circuit court. That section further provides that appeals shall be tried de novo in circuit court according to the same procedure applicable to appeals in civil actions from decisions of inferior courts, including the right of trial by jury. The parties agreed to include in the record on appeal the entire proceedings, including exhibits, before the Planning Board and Appeals Board.

At a bench trial, Jill Lewis testified that other businesses were located in the Meadow

Wood subdivision, including a clock shop operated out of Knight's garage. Jill stated that she was told that she and Jimmy had to apply for a permit because Knight was "pushing the issue." Jill confirmed that Knight had registered complaints against their business in 2008 and 2012. She stated that Knight did not mention his recusal at the TAC meeting and that Knight arrived with the woman who also spoke in opposition at that meeting. Jill testified that she did not recall whether Knight was sitting on the board at the time of her presentation at the TAC meeting. Jill stated that, although Knight announced his recusal at the June public hearing, he nevertheless participated in the public discussion.

Christopher Ryan, Director of Planning and Environmental Services, testified that Knight had announced his recusal shortly before the TAC meeting. Ryan testified that the purpose of such meetings is to determine an applicant's intentions with regard to the proposed use of their land. According to Ryan, the TAC meeting is not a public hearing, but rather is an opportunity for the applicant to "hash out any concerns" after the staff gives its initial report and preliminary recommendations. Ryan identified an e-mail from Knight to other board members dated May 4, 2012, stating that he was recusing from the Downtown Towing project. Ryan conceded that Knight's announcement in the e-mail was followed by his comment concerning a road leading into the towing-storage area. Ryan stated that it was normal for board members to sit with the public after they had recused from voting.

The Lewises then called Knight as a witness. Knight testified that he recused from voting on the Lewises' project before the TAC meeting due to his conflict of interest. According to Knight, he was only voicing his opinion and concerns as a resident of Meadow

SLIP OPINION

Wood, and he noted that other residents had expressed similar concerns. Knight agreed that he referred to his six-years' experience as chairman of the Siloam Springs Planning Commission before the Planning Board but that his fellow board members were capable of thinking for themselves. Knight pointed out that the justices on the Appeals Board had "no idea who [he was]" and simply heard what he had to say.

In its judgment denying the Lewises' application, the trial court ruled in relevant part:

> The Court finds that clearly there was a conflict of interest that Ken Knight identified that he had with Downtown Towing and the Plaintiffs. Although Ken Knight presented opposition at the TAC meeting, the TAC meeting is a preliminary meeting to determine how to proceed to the next level which would have been the hearing. Knight clearly recused on May 6th, 2012, and then did not participate in the May 16th hearing and did not participate in the June 6th hearing as an adjudication official but did participate as a witness and likewise did so at the appeal hearing and likewise did so today. The Court finds that although it probably could have been done differently, Knight did not abuse his discretion as a Planning Board member. Based upon the finding of this Court, the Benton County Appeal Board, and the Planning Commission Board, I find that Plaintiffs' due process rights were not violated.

We will affirm the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Bolen v. Washington Cnty. Zoning Bd. of Adjustments*, 2011 Ark. App. 319, 384 S.W.3d 33. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Id.*

The Lewises argue that they were deprived of due process because they did not have their case heard by a fair and impartial tribunal from the outset of the proceedings. They maintain that Knight did not recuse until after he had tainted the entire application process. The Lewises argue that, even though Knight did not vote on their proposal, he provided

testimony and opinions before his fellow board members, with whom he had ex parte communications seeking to influence them. The Lewises further assert that Knight stood to benefit personally by the decision in that he admitted having a pecuniary interest involving property values.

The Lewises cite several cases—many from other jurisdictions—but those cases are distinguishable in that the arbiter had no personal stake in the outcome of the decision and/or did not recuse from participation in the decision-making process.[1] Here, Knight recused from voting on the Lewises' proposal, and his participation was limited to speaking as a member of the general public and as a witness. We agree with the trial court's observation that "it

---

[1]*E.g. Madden v. U.S. Assocs.*, 40 Ark. App. 143, 844 S.W.2d 374 (1992) (affirming circuit court's reversal of revocation of registration and licenses because appellees had no fair hearing where agency's hearing officer had ex parte discussions with department representatives); *In re Murchison*, 349 U.S. 133 (1955) (reversing and holding denial of due process for Michigan Supreme Court to uphold convictions where same judge that presided at contempt hearing had also served as the "one-man grand jury" out of which contempt charges arose); *Gibson v. Berryhill*, 411 U.S. 564 (1973) (vacating and remanding but holding that Alabama's Three-Judge District Court was warranted in concluding that board members' pecuniary interest disqualified them from passing on issues); *Borough of Youngsville v. Zoning Hearing Bd. of Borough of Youngsville*, 450 A.2d 1086 (Pa. Commw. Ct. 1982) (holding reversal not necessary on basis that board member should have disqualified himself from participating in the decision because it was not alleged that member controlled or unduly influenced other board members on their votes); *Antoniu v. S.E.C.*, 877 F.2d 721 (8th Cir. 1989) (nullifying SEC proceedings against Antoniu where commissioner who participated in decision to permanently bar Antoniu from employment in securities business had given speech outlining Antoniu's case and labeling him a violator); *Ark. Racing Comm'n v. Emprise Corp.*, 254 Ark. 975, 497 S.W.2d 34 (1973) (affirming circuit court's finding under APA that commissioner was disqualified from participating in hearing on revocation of franchise where his comments to the public could be seen as unfavorable to one side); *Bove v. Bd. of Review of City of Newport*, 185 A.2d 751 (R.I. 1962) (nullifying board action where chairman disqualified himself, requested alternate member serve as active member in his place, and did not vote but stated that he would participate "to such extent as may be required in the conduct of this hearing" because statute provided for hearing before five members, not six).

probably could have been done differently." Nevertheless, the Lewises do not cite any authority to support the proposition that, even though he had recused from voting, because Knight was both a board member and a property owner, he had no right to be heard, as did his neighbors, on a matter directly impacting him and his interests. Accordingly, we cannot say that the trial court clearly erred in finding that Knight did not abuse his discretion as a board member, thereby denying due process to the Lewises.

Moreover, although the Lewises claim that Knight contaminated the entire process, we note that, with each appeal, whatever influence Knight might have had on his fellow board members became further attenuated. Knight had no connection to the justices on the Appeals Board, yet they upheld the Planning Board's decision. The Lewises were thereafter provided with a trial de novo, meaning that the entire case was tried anew.[2] The trial de novo was the Lewises' opportunity to obtain an impartial decision on their application without any perceived taint resulting from Knight's involvement, yet the Lewises introduced transcripts from the prior proceedings and even called Knight as a witness. The Lewises do not argue that they failed to receive a fair trial in circuit court or were denied due process when they were afforded a new trial.

Affirmed.

WOOD and BROWN, JJ., agree.

*William R. Mayo*, for appellants.

*Clark & Spence*, by: *George R. Spence*, for appellee.

---

[2]*Black's Law Dictionary* 1645 (9th ed. 2009).