Cite as 2025 Ark. App. 328

# ARKANSAS COURT OF APPEALS
## DIVISION II
### No. CV-21-282

| | |
|---|---|
| MMSC, LLC, F/K/A MMSW, LLC<br>APPELLANT | Opinion Delivered May 28, 2025<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72CV-19-1297] |
| V. | |
| WASHINGTON COUNTY, ARKANSAS; QUORUM COURT OF WASHINGTON COUNTY, ARKANSAS; JOSEPH K. WOOD, IN HIS OFFICIAL CAPACITY AS COUNTY JUDGE; DINAH DICKERSON; CAROLINE COX; STEPHENIE FOSTER; MARTY MATLOCK; AND THE HIGHLAND COMMUNITY ASSOCIATION<br>APPELLEES | HONORABLE JOHN C. THREET, JUDGE<br><br><br><br><br><br>AFFIRMED |

**N. MARK KLAPPENBACH, Chief Judge**

MMSC, LLC, appeals a Washington County Circuit Court order affirming the quorum court's denial of its application for a conditional use permit ("CUP") to operate a red-dirt mine in an unincorporated area of Washington County. On appeal, MMSC argues that the circuit court erred in (1) applying the arbitrary-and-capricious standard of review when the review required was de novo; (2) finding Arkansas Code Annotated section 14-17-211 (Repl. 2013), which expressly required de novo review, unconstitutional; and (3) finding

that the quorum court's denial of its CUP application was not arbitrary and capricious. We affirm the circuit court's order.

## I. *Background Facts*

In 2018, MMSC, LLC, operating as Heritage Farms, applied for a CUP from Washington County, seeking to operate a red-dirt mine on approximately twenty acres that it owned in rural Washington County. It sought to use part of the land for "open cut red-dirt mining operations" and another part for a dirt-pit haul road. The property on which MMSC sought to operate the red-dirt mine was zoned for "agricultural and single-family residential uses" only. The Washington County planning director prepared a packet with the details of MMSC's application, which was to be heard as an agenda item at a meeting of the Washington County Planning Board. The planning director declined to make a recommendation on whether to grant the permit, but he identified conditions for approval and noted that the staff received 137 public comments, all in opposition to this proposed dirt pit.

At its meeting, the planning board voted to deny MMSC's application for a CUP. MMSC appealed the denial to the Washington County quorum court. The quorum court voted to uphold the planning board's denial of MMSC's request. The quorum court's decision was memorialized in Washington County Ordinance No. 2019-26.

MMSC appealed to the Washington County Circuit Court. Dinah Dickerson, Caroline Cox, Stephenie Foster, Marty Matlock, and the Highland Community Association

moved to intervene, which was ultimately granted.[1]  MMSC filed a motion for summary

judgment, arguing that the planning board's and quorum court's denial of its CUP

application was "arbitrary, capricious, and against the objective evidence that was presented."

Washington County, the Quorum Court of Washington County, and Joseph K. Wood, in

his official capacity as Washington County judge (collectively the "respondents") responded,

arguing that a genuine issue of material fact existed regarding whether MMSC satisfied

Washington County Code of Ordinances § 11-200.  The intervenors responded to the

summary-judgment motion, arguing that it should be denied because MMSC failed to cite a

standard of review or include any discussion of whether the quorum court's decision was

legislative or administrative and that the evidence shows that MMSC failed to satisfy its CUP-

factor burden.

Subsequently, the intervenors moved for summary judgment, arguing that (1) because

the CUP decision was legislative in nature, the proper standard of review is whether the

decision was arbitrary and capricious, (2) a de novo jury trial pursuant to Arkansas Code

Annotated section 14-17-211 would violate article 4 of the Arkansas Constitution, and (3)

the administrative record reflected a rational basis for the quorum court's CUP decision.

The circuit court denied MMSC's summary judgment motion. The circuit court considered

the intervenors' summary-judgment motion, and it granted the motion in part and denied

it in part.  The court found that the appeal was of a legislative matter of the quorum court,

[1]The intervenors are property owners who own land adjacent to the CUP site or work
or live near the CUP site and the road that would access the site.

3

and as such, the applicable standard of review is whether the decision on the CUP is arbitrary and capricious. However, genuine issues of material fact remained under the applicable standard.

After a final hearing, the circuit court ruled from the bench that the quorum court's denial of the CUP application was not arbitrary, capricious, or unreasonable," and that a "rational basis exists in the record" to support the quorum court's decision. The circuit court also found "Ark. Code Ann. § 14-17-211 unconstitutional to the extent it purports to grant *de novo* review of county legislative zoning issues[.]"

MMSC appealed, but due to deficiencies in the record lodged on appeal, we remanded for the filing of a corrected record. *See* Ark. R. App. P.-Civ. 7(b)(1); *MMSC, LLC v. Washington Cnty.*, 2024 Ark. App. 209, at 3. That deficiency has been corrected, and now MMSC pursues its appeal, to which the respondents and intervenors have jointly responded.

II. *Points on Appeal*

For reversal, MMSC argues three points: (1) that the circuit court should have reviewed the quorum court's denial of its CUP application de novo because the planning board and quorum court were applying an existing zoning ordinance, not enacting a new zoning law; (2) that even if the quorum court's action was legislative, Arkansas Code Annotated section 14-17-211 requires de novo review, and the statute is not unconstitutional; and (3) even if the circuit court was right in applying the arbitrary-and-capricious standard of review, the court's findings were clearly erroneous and clearly against the preponderance of the evidence.

4

A. Applicable Washington County Ordinances

Pursuant to Article VI of the Washington County Code of Zoning Ordinances, all unincorporated areas of Washington County are zoned agricultural and single-family residential. Washington County Code of Ordinances § 11-194 (2008). Agricultural uses include the care and production of livestock and poultry, as well as planting, cultivating, harvesting, and processing crops and timber. *Id.* § 11-195(a)(1)–(2). Single-family residential means a detached dwelling occupied by one family. *Id.* § 11-195(b). All other proposed uses—besides agricultural or single-family residential—are conditional uses, and a CUP may be granted by the planning board once it has considered seven listed factors. *Id.* § 11-196. Dirt mining is considered a "large scale development." *Id.* § 11-100(a)(2). If the impact of the conditional use on those on the factors would be "significantly lessen[ed]" by additional conditions imposed by the board, then the board may impose those conditions. *Id.* § 11-200(b).

An applicant seeking a CUP must file an application with the planning office. *Id.* §§ 11-204, 11-205. Adjoining property owners must be notified of the application. *Id.* § 11-204. The application is then heard by the planning board. *Id.* § 11-200(a). If a board majority votes to grant the application, then the quorum court must ratify that decision by ordinance. *Id.* § 11-201(a). If the board denies the application, the applicant may appeal to the quorum court. *Id.* § 11-206. If the quorum court affirms the denial, the applicant may appeal that ruling in circuit court. *Id.* § 11-206; *see also* Ark. Code Ann. § 14-17-211.

B. Circuit Court's Standard of Review

In its first point on appeal, MMSC argues that the circuit court erred in reviewing the quorum court's denial of the CUP under the arbitrary-and-capricious standard of review rather than under the de novo standard. It claims that because the quorum court was acting in a quasi-judicial capacity, rather than a legislative capacity, the circuit court's review was de novo, and its failure to apply the correct standard of review constitutes reversible error. MMSC argues that this case is governed by our supreme court's opinion in *King's Ranch of Jonesboro, Inc. v. City of Jonesboro*, 2011 Ark. 123. Appellees respond that the circuit court correctly relied on *PH, LLC v. City of Conway*, 2009 Ark. 504, 344 S.W.3d 660, and *Bolen v. Washington County Zoning Board of Adjustments*, 2011 Ark. App. 319, 384 S.W.3d 33, which require it to apply the arbitrary-and-capricious standard.

We review a circuit court's standard-of-review selection de novo. *See King's Ranch of Jonesboro, Inc.*, 2011 Ark. 123, at 7; *PH*, 2009 Ark. 504, at 10–11, 344 S.W.3d at 666. On appeal, we must decide if the circuit court was correct in finding that the quorum court's decision was a legislative matter on which the arbitrary-and-capricious standard would apply.

Several previous cases are instructive in our analysis. The "crucial test for determining what is legislative and what is administrative [quasi-judicial] is whether the ordinance is making a new law, or one executing a law already in existence." *King's Ranch of Jonesboro, Inc.*, 2011 Ark. 123, at 4–5. In *PH*, both the Conway Planning Commission and City Council denied PH's application to rezone land from agricultural to residential. PH sought de novo review of that denial in circuit court. The circuit court determined that the city council's action was legislative, that there were legitimate concerns about the rezoning

6

request, and that the city did not act arbitrarily and capriciously. The supreme court agreed with the circuit court and held that zoning decisions, whether to approve or deny a requested rezoning of land, are legislative in nature. *PH, supra* at 11, 344 S.W.3d at 666.

Subsequently, our supreme court in *King's Ranch* considered whether a city council's decision to grant or deny a CUP application was a legislative or quasi-legislative act for purposes of circuit court standard of review. *King's Ranch of Jonesboro, Inc.,* 2011 Ark. 123, at 1–2. King's Ranch sought to operate a group home for children on a tract of property within city limits. The tract was zoned residential. The planning commission staff found that the proposed use was within the "conditional uses" as set out in the city ordinance, but it denied the CUP application. The city council also denied the CUP. *Id.* at 3. In its review, the circuit court found that, because deciding whether to grant or deny the CUP application was "substantially similar to that of rezoning," the act was legislative in nature, and it applied the rational-basis standard of review. *Id.* The supreme court disagreed and reversed. *Id.* at 4. It explained how a CUP is obtained under the Jonesboro Ordinance at issue:

> In granting or denying a conditional use permit, the city council is not amending any provisions to the Ordinance. Instead, an analysis is undertaken to determine whether the proposed conditional use complies with the already existing provisions of the Jonesboro Ordinance. When a conditional-use application is filed, eight factors set out in the Ordinance are considered by the Planning Commission, *see* Jonesboro Code Ordin. (Ark.) § 117–198(a-h) (2010), and a decision must be made that includes findings of whether "the proposed use is within the provision of conditional uses as set out in this Ordinance," *see* Jonesboro Code Ordin. (Ark.) § 117–198(a) (2010), whether the proposed use conforms to applicable provisions of the Ordinance, *see* Jonesboro Code Ordin. (Ark.) § 117–198(b), whether it is "not inconsistent with requirements of this Ordinance," *see* Jonesboro Code Ordin. (Ark.) § 117–198(f), and whether it is in "in accordance with provisions of this Ordinance," *see* Jonesboro Code Ordin. (Ark.) § 117–198(g) (2010). It is thus clear that a decision on a

7

conditional-use application requires an application of the facts to the existing provisions of the Ordinance, and a judgment on whether the conditional use should be granted under the existing Ordinance provisions.

*Id.* at 5–6. The supreme court concluded that the city council's action was a quasi-judicial act based on an application of the facts to the existing ordinance provisions. *Id.* at 6. Therefore, the supreme court held that the circuit court erred in applying the rational-basis standard of review. *Id.*

Shortly after *King's Ranch* was handed down, this court addressed a quorum court zoning decision to grant a CUP to allow a landowner to operate a rock quarry. *See Bolen*, 2011 Ark. App. 319, at 1, 384 S.W.3d at 35. In *Bolen*, (as here), the unincorporated areas of Washington County were zoned agricultural and single-family residential, and Big Red Dirt Farm applied for a CUP to operate a quarrying operation on its land, which the quorum court granted. *Id.* at 2–5, 384 S.W.3d at 35–37. The Bolens and other surrounding landowners appealed to the circuit court and sought de novo review. *Id.* at 5, 384 S.W.3d at 37. Big Red argued that because the quorum court's decision was legislative, the Bolens were not entitled to de novo review. *Id.* Relying on the supreme court's opinion in *PH*, the circuit court found that the quorum court "made a zoning decision because it changed the land use authorized by the zoning ordinance." *Id.* at 6, 384 S.W.3d at 37. Thus, the Bolens were not entitled to de novo review. *Id.* On appeal to this court, the Bolens argued that the quorum court's decision was administrative (not legislative), and the circuit court's refusal to conduct a de novo review constituted reversible error. *Id.* at 6, 384 S.W.3d at 38.

8

We looked "to the character of the act (as opposed to the label) in order to determine whether it is legislative or administrative." *Id.* at 7, 384 S.W.3d at 38. If the quorum court's action sets policy, it is legislative; if it effectuates policy, it is administrative. *Id.* We reviewed cases previously addressing the issue and held:

> Based on our collective understanding of governing case law and Arkansas's statutory-zoning scheme, we are convinced that the conditional-use permit granted in this case was a legislative act. The underlying zoning ordinance did not provide for either a quarry or extraction land use. It also did not establish any development requirements for a landowner who desired to engage in quarrying as a conditional use. The quorum court's decision incorporates into the county's land-use plan a *new* use (extraction) in an area previously zoned exclusively agricultural and residential. The quorum court also established numerous developmental restrictions, including installation of a four-foot high chain link fence and an eight-foot high berm with an evergreen vegetation screen and a one hundred-foot buffer. The quorum court's decision was in essence a new ordinance that imposed conditions regarding traffic flow and hours of operation for blasting and crushing. The approval and accompanying restrictions followed an analysis of needs and appropriate and desired public policy.

*Id.* at 10–11, 384 S.W.3d at 40. *Bolen* held that the facts in *Bolen* were "quite different" from those in *King's Ranch. Id.* at 9, 384 S.W.3d at 39. Specifically, the Washington County ordinance at issue in *Bolen* does "not set out mining as a permitted 'use' and does not contain a corollary scheme of conditions to guide the board in an administrative review of the mining-use application. In order to make any determination about mining, new land uses and restrictions would have to be defined—all of which are policy determinations, ergo legislative determinations." *Id.*

In the present case, the circuit court found that the appeal from the quorum court was of a legislative matter, so the applicable standard of review is whether the quorum court's decision on the CUP is arbitrary and capricious. In its bench ruling, the circuit court stated:

9

I think the effect of what the decision is by the Quorum Court is legislative because it is the same as re-zoning. It is a new land use. Therefore, I believe it is legislative, therefore, it does not get a de novo review. I think – one thing I think that the courts are clear on, even though it may not be as clear with conditional use, but again, I would have to apply that label the same for every single city and every single county in the state. You would have to apply that law to a conditional use regardless of what that conditional-use permit actually did. It would be irrelevant what it actually did, it would just be the name, conditional-use permit.

Even though I know the court talks about factors, applying the factors, and then applying the ordinance, which I think in this case, I think the law – the cases are clear that zoning – re-zoning new land use is policy. Therefore, it is not de novo; it's the arbitrary and capricious standard of review.

And I think *PH* was saying that zoning decisions, whether grants or denials, are legislative. It's clear it's not just the passing of a zoning ordinance that's legislative. Therefore, the actual effect of the Quorum Court's decision would be to re-zone, would be to assign a brand new land use. Therefore, the standard of review, this Court believes is not de novo and is arbitrary and capricious.

We agree with the circuit court that the quorum court's decision was legislative primarily because the facts here are strikingly similar to those in *Bolen*. As appellees point out, the determination sought in the *Bolen* CUP is the same sought by MMSC here—a change in zoning from the default residential and agricultural designation to industrial mining—in the same county, under the same county ordinances. The circuit court recognized that even though the means to achieve the land-use change here was a CUP, the relief sought through the application was a new land use not currently permitted by the Washington County zoning ordinance. A CUP was simply the means by which to achieve that zoning change. As the circuit court correctly found, we do not look solely to the "CUP" label to determine whether an action is administrative or legislative because a conditional use can mean different things in different cities and counties within the state. Because the action here was

10

a request for a change in the land use, we agree with the circuit court that *Bolen* and *PH*,

control and that this was a legislative matter subject to the arbitrary-and-capricious standard

of review.

Furthermore, we see no need to overrule *Bolen*, as MMSC urges this court to do,

based on an alleged inconsistency between that case and *King's Ranch*.[2] The present case and

*Bolen* are distinguishable from *King's Ranch*. In *King's Ranch*, when a CUP application is

filed, the "eight factors set out in the [Jonesboro] Ordinance are considered by the Planning

Commission," and a decision must be made that includes findings on those factors. *King's*

*Ranch of Jonesboro, Inc.*, 2011 Ark. 123, at 5. The first of those factors is whether the

"proposed use is within the provision of conditional uses as set out in this Ordinance." *Id.*;

s*ee also* Jonesboro, Ark., Code of Ordinances § 117-198. The Jonesboro Code of Ordinances

includes a "Permitted Use Table for Residential Uses"—a table containing numerous

residential, commercial, and agricultural land uses, many of which are permissible in

residential districts subject to acquiring a CUP. *See* Jonesboro, Ark., Code of Ordinances §

117-138. Thus, the first step in reviewing a CUP application in that city required

---

[2]In fact, the Bolens filed a petition for review in the supreme court following this court's decision to affirm, and the supreme court denied review. *Bolen v. Washington Cnty. Zoning Bd. of Adjustments*, No. CV-11-519 (order denying petition for review). The supreme court has also quoted *Bolen* in explaining that that the enactment and amendment of local zoning is a legislative matter, whereas the execution and enforcement of the zoning laws are administrative tasks. *Sullins v. Cent. Ark. Water*, 2015 Ark. 29, at 8, 454 S.W.3d 727, 732 (quoting *Bolen,* 2011 Ark. App. 319, at 7, 384 S.W.3d at 38).

consideration of the table, which requires applying the facts to the provisions of the existing ordinance. *King's Ranch of Jonesboro, Inc.*, 2011 Ark. 123, at 4.

Here, in contrast, there is no table from which to determine whether the proposed conditional use is permissible. Instead, the quorum court made a discretionary decision on whether to allow a new use of the land like the quorum court did in *Bolen*. Thus, even though the means here to achieve the new land use was ostensibly a CUP, the decision on whether to grant the CUP was legislative, not administrative. Accordingly, we affirm the circuit court's decision that as a legislative matter, its review of the quorum court's CUP denial was under the arbitrary-and-capricious standard of review.

C. Constitutionality of Arkansas Code Annotated Section 14-17-211

MMSC next argues that the circuit court erred in finding Arkansas Code Annotated section 14-17-211 unconstitutional. The circuit court relied on *Wenderoth v. City of Fort Smith*, 251 Ark. 342, 472 S.W.2d 74 (1971), in its constitutionality finding, but MMSC contends that *Wenderoth* does not apply here. It argues that *Wenderoth* concerned appeals from municipal actions, not county actions, and "county government is not state government." Appellees respond that the circuit court's decision to strike section 14-17-211 is consistent with supreme court and court of appeals precedent and that MMSC's argument that "county government is not state government" is unpreserved for appeal.

This court reviews the circuit court's interpretation of the constitution and issues of statutory interpretation de novo because it is for this court to determine the meaning of a statute. *Forrester v. Martin*, 2011 Ark. 277, at 3, 383 S.W.3d 375, 378. Every statute enjoys

12

a presumption of constitutionality. *Broussard v. St. Edward Mercy Health Sys., Inc.*, 2012 Ark. 14, at 4, 386 S.W.3d 385, 388. The party asserting that a statute is unconstitutional bears the burden of demonstrating that the statute violates the constitution. *Id.* Any doubt is resolved in favor of constitutionality. *Id.* An act should be struck down only when there is a clear incompatibility between the act and the constitution. *Landers v. Stone*, 2016 Ark. 272, at 7, 496 S.W.3d 370, 375.

Intervenors argued below, and the circuit court agreed, that section 14-17-211 is unconstitutional because it violates the separation of powers clauses in article 4 of the Arkansas Constitution. Section 14-17-211 states:

> In addition to any remedy provided by law, appeals from final action taken by administrative, quasi-judicial, and legislative agencies concerned in the administration of this subchapter may be taken to the circuit court of the appropriate county where they shall be tried de novo according to the same procedure applicable to appeals in civil actions from decision of inferior courts, including the right of trial by jury.

Pursuant to article 4, section 1 of the Arkansas Constitution, our state government is divided into three distinct departments: legislative, executive, and judicial. No one department "shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted." Ark. Const. art. 4, § 2.

In striking down section 14-17-211, the circuit court found that, although the statute purports to grant a de novo review of legislative zoning decisions:

> [C]ases involving similar language purporting to grant *de novo* jury trial review in appeals of municipal legislative zoning decisions do find *de novo* review of legislative [zoning decisions] unconstitutional. *PH, LLC v. City of Conway*, 2009 Ark. 504, 344 S.W.3d 660 (2009); *Wenderoth v. City of Fort Smith*, 251 Ark. 342, 472 S.W.2d 74

13

(Ark. 1971). Thus, to the extent Ark. Code Ann. § 14-17-211 purports to grant *de novo* review of county legislative zoning decisions, the Court hereby finds Ark. Code Ann. § 14-17-211 unconstitutional as a violation of the Separation of Powers Clauses found at Ark. Const. Art. IV, §§ 1 and 2.

MMSC's argument below in favor of upholding the statute was that the quorum court's decision "was quasi-judicial and/or administrative, and [the circuit court] may constitutionally review quasi-judicial actions of quorum courts de novo." To the extent that MMSC has preserved a constitutionality argument, it is limited to those arguments developed and ruled upon by the circuit court. A party is bound by the scope and nature of the arguments made before the circuit court. *Washington Cnty. v. Coger*, 2025 Ark. App. 145, 709 S.W.3d 827.

The circuit court declared the statute unconstitutional solely to the extent it "purports to grant de novo review of county legislative zoning decisions." The municipal zoning statute at issue in *Wenderoth*, which was almost identical to the county statute at issue in the present case, stated:

> In addition to any remedy now provided by law, appeals from final action taken by the administrative, quasi-judicial, and legislative agencies concerned in the administration of this Act may be taken to the Circuit Court of the appropriate county, wherein the same shall be tried de novo according to the same procedure which applies to appeals in civil actions from decisions of inferior courts, including the right of trial by jury.

*Id.*, 251 Ark. at 344, 472 S.W.2d at 75.

In holding the statute unconstitutional, the supreme court stated:

The legislative power of the people is vested in the general assembly with the right of the initiative and referendum reserved to the people. Amendment 7, § 1. Although the power to enact laws is vested in our General Assembly, we have long recognized

14

that our legislature can delegate to municipal corporations the legislative power to enact ordinances. *Little Rock v. North Little Rock*, 72 Ark. 195, 79 S.W. 785 (1904). There we said that: '* * * there is nothing better settled than that the Legislature may delegate to a town council legislative authority over the municipal affairs of the town.' Therefore, when a city exercises the power conferred upon it by our state legislature, the city is acting in a legislative capacity which is coequal with the power of the legislature itself. *Little Rock Ry. & Elec. Co. v. Dowell*, 101 Ark. 223, 142 S.W. 165 (1911). There we said that when a municipality exercised the delegation of this legislative authority, the courts cannot take away the discretion vested in the city's legislative body. *See also* 16 Am. Jur. 2d 466, §§ 223 and 504, § 255.

In the case at bar we are likewise of the view that this statute cannot empower the judiciary to take away the discretionary powers vested by our legislature in the city's legislative body to enact zoning and rezoning ordinances. . . . . By this method of appellate review do novo there is attempted to impose upon the circuit court a function of a nonjudicial character in a matter that is exclusively within the discretion and legitimate power of the city's legislative body. The result would be to substitute the judgment of the circuit court for that of a municipal law-making body. This is contrary to Article 4 of our constitution which prohibits intrusion by the judiciary upon the legislative domain.

*Id.* at 344–45, 472 S.W.2d at 75. The supreme court in *Wenderoth* held that, "after giving presumptive validity to the act[,]" the statute was unconstitutional "when applied to zoning or rezoning ordinances." *Id.* at 347, 472 S.W.2d at 76.[3]

The supreme court in *PH*, later reiterated that "zoning decisions, whether grants or denials, are legislative" and are reviewed under the "arbitrary, capricious, and unreasonable" standard of review. *PH, supra*, 2009 Ark. 504, at 11, 344 S.W.3d at 666. Despite the revision of the municipal-zoning appeal statute, the county-zoning appeal statute, section 14-17-211, remains unchanged and appears to suffer from the same constitutional infirmity as the

---

[3]The supreme court noted that it was not "not pass[ing] judgment upon the constitutionality of the act as applied to the city council or other agencies acting in an administrative or quasi-judicial capacity." *Id.* at 347 n.1, 472 S.W.2d at 76 n.1.

former version of the municipal statute, i.e., it empowers the judiciary to take away the discretionary powers vested by our legislature in the county's legislative body to enact zoning and rezoning ordinances.

A statute allowing courts to take away the discretion vested in the city's legislative body is contrary to article 4 of the Arkansas Constitution. *Id.*; *see also City of Ft. Smith v. McCutchen*, 372 Ark. 541, 544, 279 S.W.3d 78, 81 (2008). The Arkansas legislature has also "delegated to the [county] quorum court the legislative authority to engage in comprehensive land-use planning and to classify various zones and authorize and deny certain land uses within those zones." *Bolen*, 2011 Ark. App. 319, at 9, 384 S.W.3d at 39. Thus, even giving section 14-17-211 the presumption of constitutionality, de novo review by circuit courts of legislative zoning decisions takes away the discretion vested in the county law-making body, which constitutes an unconstitutional taking of the power of the legislative branch. Accordingly, to the extent that section 14-17-211 provides for de novo review of legislative zoning decisions, it is contrary to article IV of our constitution, and we affirm the circuit court's ruling that it is unconstitutional.[4]

D. Denial of the CUP under the Arbitrary-and-Capricious Standard of Review

We turn now to MMSC's argument that the circuit court clearly erred in finding that the quorum court's denial of the CUP was not arbitrary and capricious. The circuit court

---

[4]Our holding is limited to the constitutionality of section 14-17-211 as applied to legislative decisions. *See Wenderoth*, 251 Ark. at 347 n.1, 472 S.W.2d at 76 n.1. The constitutionality of the statute as applied to administrative or quasi-judicial matters is not before the court in this appeal.

has a limited function in reviewing legislative matters. *See City of Lowell v. M & N Mobile Home Park, Inc.*, 323 Ark. 332, 339, 916 S.W.2d 95, 98 (1996). The circuit court shall uphold the legislative rezoning decision unless the court determines that the decision was arbitrary or capricious or lacking a rational basis. *City of Bethel Heights v. City of Springdale*, 2017 Ark. App. 81, 514 S.W.3d 472. "Arbitrary" is "decisive but unreasoned action," and "capricious" is "not guided by steady judgment or purpose." *City of Lowell*, 323 Ark. at 339, 916 S.W.2d at 99. An enactment is not arbitrary if there was any reasonable basis for its enactment. *Id.*

Our appellate standard of review is well settled in appeals concerning legislative rezoning. *City of Bethel Heights*, 2017 Ark. App. 81, at 3, 514 S.W.3d at 475. We will affirm the circuit court's findings unless they are clearly erroneous or clearly against the preponderance of the evidence, which means that although there is evidence to support it, the reviewing court, based on the entire, evidence is left with a firm conviction that a mistake has been made; disputed facts and determinations of credibility are within the province of the fact-finder. *Id.* at 4, 514 S.W.3d at 475.

As said, in the unincorporated areas of Washington County, all land uses other than agricultural or single-family residential are considered conditional uses, and a CUP may be granted by the planning board based on consideration of the following seven factors:

1. That a written application has been filed with the Planning Office and the appropriate fee has been paid.

2. That the applicant has provided proof that each property owner as set out in section 11-204 has been notified by return receipt mail.

17

3. That adequate utilities, roads, drainage and other public services are available and adequate or will be made available and adequate if the use is granted.

4. That the proposed use is compatible with the surrounding area.

5. That the establishment, maintenance, or operation of the conditional use will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare.

6. That the conditional use will not be injurious to the use and enjoyment of other property in the surrounding area for the purposes already permitted, nor substantially diminish and impair property values within the surrounding area.

7. That the establishment of the conditional use will not impede the normal and orderly development and improvement of the surrounding area for uses permitted in the zone.

Washington County Code of Ordinances § 11-200(a).

Only the last four factors were at issue in this case. In denying the CUP, the quorum court did not issue findings on the factors but memorialized the members' votes in an ordinance and stated that, in making its decision, it had reviewed "the information provided by the Planning Department, the applicant, and members of the community." On appeal from the quorum court, the circuit court found in its final order:

> Applying the "arbitrary, capricious, or unreasonable" standard, the Court hereby finds in favor of Respondents and Intervenors. The Court bases this decision on the reasons stated by the Respondents and Intervenors in their trial briefs, oral arguments and evidence presented by counsel during the February 11, 2021, hearing, and the Court's oral ruling at the conclusion of that hearing. A rational basis exists in the record to support the Quorum Court's decision adopting an ordinance denying Petitioners' Conditional Use Permit.

18

It made additional findings in its bench ruling about noise, proximity to homes, potential issues with traffic, the residential composition of the area, property values, and the length of the quorum court meeting. It then stated:

> There has to be substantial evidence to support their finding, which means it has to go past conjecture. All of the evidence put before the Quorum Court put them past conjecture. It was -- and it's not arbitrary and capricious. If there's any rational basis and if there is substantial evidence, then as the courts have stated, it follows it's not arbitrary and capricious.

> There is a presumption they acted in a reasonable manner, but it would also require this court -- is required to give the evidence the strongest prohibitive force in favor of the ruling. And even if this review in court would have come up with a different decision, their decision cannot be overturned simply because this Court believes that there was a rational basis supported by substantial evidence.

MMSC disagrees with the circuit court. MMSC argues that the circuit court erred in upholding the quorum court's denial because (1) MMSC's proposed use is compatible with the surrounding area; (2) its proposed use will not be detrimental to, or endanger, the public health, safety, morals, comfort, or general welfare; (3) its proposed use will not be injurious to the use and enjoyment of other property in the surrounding area; and (4) the proposed use will not impede the normal and orderly development and improvement of the surrounding area for uses permitted in those zones.

We must determine whether the circuit court clearly erred in its findings on the disputed factors from Washington County Code of Ordinances § 11-200(a) and its conclusion that the CUP denial was not arbitrary and capricious.

1. *Compatibility*

19

MMSC first asserts that there was no rational basis for denying its CUP based on compatibility since its proposed use of the land is consistent with the surrounding area because (1) the property is in rural Washington County, (2) there are other quarries and red-dirt pits in the area, and (3) the property is bordered by farmland and timberland. MMSC also asserts that the "Arkansas Open-Cut Land Reclamation Act," codified at Ark. Code Ann. §§ 15-57-301 *et seq.* (the "Mine Act"), supports "compatibility" because the policy purpose of the Act is "to provide *during* and after completion of open-cut mining operations . . . *for compatible multiple purpose*." Ark. Code Ann. § 15-57-302 (Repl. 2009) (emphasis added). Appellees respond that the outpouring of opposition by Highland Community residents and landowners demonstrates the incompatibility and that the Mine Act is inapplicable.

Compatible uses are those that are "[m]utually tolerant; capable of being admitted together, or of existing together in the same subject; accordant, consistent, congruous, agreeable." *Benton Cnty. Stone Co., Inc. v. Benton Cnty. Plan. Bd.*, 374 Ark. 519, 525, 288 S.W.3d 653, 657 (2008). Despite the existence of other mining operations within a few miles of the property, the record before the quorum court contained 168 public comments in opposition. There were ninety-five property owners within a half mile of the proposed dirt pit. One property owner said he uses his land to "produce blackberries and honey for commercial markets in Fayetteville, host community events, and enjoy the solitude of our land." He said those activities would not be possible with "an active mining operation within hundreds of feet of us. The noise and dust will be disruptive." Another property owner said

20

they had been affected already with the noise from bulldozers and other heavy equipment. On the issue of compatibility, the circuit court stated that evidence was persuasive on "how residential the area was," how close two homes were to the area's entrance, and how the heavy machinery produced noise as they loaded, unloaded, backed up, and ran. This supports the finding on incompatibility.

Further, we are unpersuaded by MMSC's reliance on the Mine Act. Although the Arkansas Department of Environmental Quality (ADEQ) has a goal of promoting compatibility for open-cut mining through its licensing and regulatory scheme, that general goal does not demonstrate the red-dirt mine's compatibility (for zoning purposes) with this location in this case. Accordingly, we hold that the circuit court did not clearly err in its findings on lack of compatibility.

## 2. *Public health, safety, morals, comfort, and general welfare*

MMSC next argues that there are no concrete, objective indicators in the record opposing this factor because the proposed use will not be detrimental to or endanger the public health, safety, morals, comfort, or general welfare. It contends that the decision was unfairly influenced by neighbor complaints and that the Mine Act protects neighboring property owners. Ark. Code Ann. § 15-57-302. Appellees respond that numerous comments opposing the CUP based on traffic safety, environmental safety, health safety, and property enjoyment were properly considered by the quorum court in denying the CUP.

On this factor, the circuit court noted noise levels, but it also focused on increased traffic and backups of traffic that would result from the CUP. The circuit court correctly

21

noted that the standard was not whether it agreed with the quorum court's decision but whether there was a rational basis for the decision.

We are also not persuaded by MMSC's reliance on ADEQ's goals to protect health, safety, and welfare through the Mine Act because the Act does not address the zoning concerns present in this case. MMSC anticipated increased traffic volume along Green Burrow Road of about seven vehicles every weekday between the hours of 7:30 a.m. and 4:30 p.m. Those vehicles would be passenger vehicles and dump trucks ranging in size from tri-axle to quad-axle. Parents voiced concerns about child safety along the school bus route as well as general increased traffic. MMSC agreed "there is little we can do about any additional traffic, unfortunately, this is something that comes with progress and development, but we will do our best to inform anyone entering the red dirt pit to be completely off Washington 662 to not impede any current traffic." Opponents also voiced health concerns due to increased dust in the air, for which MMSC apologized and said would not be "long term." Given this evidence, we see no clear error in the circuit court's findings on this factor.

### 3. *Property use, enjoyment, and value*

MMSC argues that CUP opponents cited only their personal subjective beliefs about the mining operation's interference with property use, enjoyment, and value, asserting that those beliefs do not constitute competent evidence. Appellees respond that nearby property owners were competent to provide comments and testimony about the effect that mining has on their property use, enjoyment, and value. The circuit court agreed with appellees.

22

We agree with the circuit court that residents' comments about their own experience constitute evidence on which the quorum court could base its decision. Comments included noise complaints and the effect on residents' enjoyment of their property. One resident described diminished access to his property, stating that his only access to his farm was by a deeded easement across the proposed quarry site and that the proposed CUP makes his access unsafe, unmanageable, and inaccessible. This resident said MMSC had refused any proposed alternatives, "even though we paid for deeded right of access across this property." A real estate broker stated that in her professional opinion, the mining operation "will do nothing but negatively impact property values in this area. People go to the country for a reason, they pay a premium for agriculture/residential land so they can get away from high impact sites like the proposed dirt pit." Additionally, CUP opponents presented an economic-impact study on a mining operation in Virginia, which found that a proposed quarrying operation there would have a negative impact on property values within a three-mile radius. Given this evidence, we hold that the circuit court's findings on this issue were not clearly erroneous.

### 4. *Normal and orderly development*

MMSC argues that the CUP would not impede the normal and orderly development and improvement of the surrounding area for uses permitted in the zone. It asserts that numerous maps and photos contradict the public commentors' characterization of the surrounding areas as "residential." It argues instead that the property is in a highly rural area suited for a red-dirt mine. Appellees respond that the area is currently defined by single-

23

family residences and small farms, which reflects its current zoning structure. It claims that mining in this residential area is not normal or orderly.

The circuit court noted from the bench on this factor that normal growth development and compatibility go hand-in-hand to a degree and that a long-time resident testified that the area had become so much more residential than when he was growing up there.

Again, pursuant to the circuit court's standard of review, the quorum court's action was not arbitrary and capricious if there was any reasonable basis for its decision. Here, appellees presented photographs of existing residences and farms in the area as well as comments from neighbors explaining that the proposed CUP would diminish the value and enjoyment of their property. Property owners also "have expressed a reluctance to continue to invest in these developments with the potential for a dirt pit in the area, and some neighbors have given up the idea of building homes on their property if the dirt pit is approved." We see no clear error in the circuit court's findings on this factor.

We hold that the circuit court's findings were not clearly erroneous on the disputed factors or in its conclusion that the quorum court did not act in an arbitrary or capricious manner in its denial of MMSC's CUP application.[5]

---

[5]MMSC also argues that the record demonstrated "other evidence of arbitrariness" beyond the standard factors, such as that a quorum court member who allegedly had a conflict of interest and voted against the CUP. Because the circuit court did not rule on an alleged conflict of interest, this argument is unpreserved for our review. *See Washington County v. Coger*, 2025 Ark. App. 145, 709 S.W.3d 827,

### III. *Conclusion*

For the reasons stated above, we affirm the circuit court's order.

GLADWIN and TUCKER, JJ., agree.

*Friday, Eldredge & Clark, LLP*, by: *Martin A. Kasten* and *Kael K. Bowling*, for appellant.

*Noland Law Firm, PA*, by: *Ross Noland*; and *Brian Lester* and *Garrett Harlan*, Washington County Attorneys, for appellees.